907 F.2d 1408
 53 Fair Empl.Prac.Cas. 598,
54 Empl. Prac. Dec. P 40,091, 59 USLW 2118,
17 Fed.R.Serv.3d 122
 NEWARK BRANCH, NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF
COLORED PEOPLE, Jersey City Branch, National Association for
the Advancement of Colored People, New Jersey State
Conference, National Association for the Advancement of
Colored People, and the National Association for the
Advancement of Colored People, Appellants,
v.
TOWN OF HARRISON, NEW JERSEY.
 No. 90-5028.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
May 30, 1990.
 Decided July 13, 1990.
 
 David L. Rose, Joshua N. Rose, Washington, D.C., Joyce H. Knox, Everald F. Thompson, NAACP/SCF, Baltimore, Md., Jonathan M. Hyman, Rutgers Constitutional Litigation Clinic, Newark, N.J., for appellants.
 Karen P. Weissman, Voorhees & Acciavatti, Morristown, N.J., for appellee.
 Before HUTCHINSON, COWEN and SEITZ, Circuit Judges.
 OPINION OF THE COURT
 COWEN, Circuit Judge.
 
 
 1
 The appellants, the National Association for the Advancement of Colored People and several of its local branches (referred to collectively as "the NAACP"), appeal from an order of the district court dismissing their Title VII complaint against the appellee, the Township of Harrison ("Harrison"), for lack of standing and orders denying their motion for reconsideration and leave to amend their complaint. We find that the district court, although properly dismissing the original complaint, erred in failing to exercise its discretion as to whether the NAACP should have been granted leave to amend. Thus, we will affirm the court's order dismissing the complaint, but vacate its orders denying the NAACP's post-dismissal motions and remand for the court to determine whether an amendment should be allowed.
 
 I.
 
 2
 On July 31, 1989, the NAACP brought suit against Harrison alleging that the township's ordinance # 747 violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2 (1982) ("the Act"), because it establishes a residency requirement for municipal jobs which has a disparate impact on blacks.[1] The ordinance establishes, inter alia, that applications for municipal jobs will be accepted from nonresidents only if there is a shortage of qualified residents; that residents will always receive a hiring preference over nonresidents regardless of test scores; and that all nonresidents who are hired must move to Harrison within one year or face possible discharge. The NAACP contends that Harrison's ordinance, though neutral on its face, has a discriminatory impact since there are no blacks in the municipal workforce. As evidence of this contention, the NAACP argues that blacks and minorities comprise 21.1% of Harrison's private workforce, and the township abuts Newark and other New Jersey communities with large black populations (Harrison's minority population is less than one half of one percent).
 
 
 3
 The original complaint alleged in general terms that:
 
 
 4
 11. The defendant has engaged in employment practices which have discriminated and continue to discriminate against blacks, including members of and other persons represented by the plaintiff groups, because of their race.
 
 
 5
 . . . . .
 
 
 6
 12. The defendant's acts and practices ... constitute a pattern or practice of resistance to the full enjoyment by blacks (including members of and other persons represented by plaintiffs) of their rights to equal employment opportunities without discrimination because of race. These acts and practices are intended to be and are of such a nature as to deny to blacks the full exercise of the rights secured by Title VII.
 
 
 7
 App. at 9, 11.
 
 
 8
 Before Harrison filed an Answer to the Complaint, the NAACP moved for summary judgment or a preliminary injunction. In conjunction with this motion the NAACP filed two affidavits bearing upon the issue of standing. First, Keith Jones ("Jones"), the President of the NAACP, Newark branch, stated that: "Among the more than 2500 members of the Newark and Jersey City branches are black persons who meet all of the relevant qualifications for employment by the Town of Harrison, and who would be interested in such municipal employment in Harrison if job opportunities were made available to them." App. at 27. Second, Derek S. Ware ("Ware"), a member and the State Chairman of the Newark Branch of the NAACP, averred that he circulated among area residents a printed questionnaire entitled "N.A.A.C.P. SUBURBAN EMPLOYMENT OPPORTUNITIES CANDIDATES FOR EMPLOYMENT" ("employment opportunity questionnaire"). App. at 28, 62. This questionnaire specifically asked whether "you or a member of your family or a friend are interested in employment opportunities" in several listed towns including Harrison. Id. Ware's affidavit states that thirty-five questionnaires were returned and that in his opinion: "there are many more members of the Newark, Jersey City, Patterson, and Passaic Branches of the NAACP, and friends and relatives of such members, who are qualified for and interested in employment with Harrison and the other municipalities mentioned in the forms." App. at 29.[2]
 
 
 9
 Harrison submitted a brief in opposition to the NAACP's motion for summary judgment and filed a cross-motion to dismiss based on the NAACP's alleged lack of standing and its failure to join an indispensable party, i.e., the New Jersey Civil Service Commissioner.[3] After a hearing, the district court entered an order on September 28 granting Harrison's motion and dismissing the complaint without prejudice because of the NAACP's lack of standing. App. at 111.[4] In its accompanying Opinion, the court held that: "I must dismiss this case for lack of standing ... because individual members of the plaintiff have not made the linkage between discrimination in general and discrimination which they have personally experienced. Since the individual members of the plaintiff organizations have not shown that they have suffered the requisite 'injury in fact' to have standing to sue under [Supreme Court decisions], the plaintiffs as organizations do not have standing to sue on behalf of their members at the present time." App. at 109-10.
 
 
 10
 On October 12, 1989, the NAACP filed a motion under Fed.R.Civ.P. 59(e) for a rehearing and reconsideration of the order of dismissal. App. at 112.[5] The motion was based on the pleadings and record already established, several additional authorities, and several new affidavits and exhibits. In one of the new affidavits, Tyrone Jenkins ("Jenkins"), a black member of the NAACP residing in Newark, states that he is presently interested in obtaining employment as a fire fighter in several townships, including Harrison, but when he took the civil service exam in August 1988 he was told, apparently by employees of the Civil Service Commission, that he was only eligible to apply for jobs in his hometown of Newark. App. at 132-33. Jenkins asserts that he would have applied for a job in Harrison at that time if he had been eligible to do so. In addition, Jenkins has recently submitted an application to Harrison directly. App. at 133.
 
 
 11
 In another new affidavit, Timothy C. Wise ("Wise"), a black member of the NAACP residing in Newark, avers that he is also interested in obtaining employment as a fire fighter with Harrison and would accept such a position, "if residence were not a controlling factor in the hiring process." App. at 134. Wise states that he applied for a position with Newark and passed the required civil service exam, but would have applied for a job with Harrison too if he had not also been told that he was eligible only for municipal employment in Newark.
 
 
 12
 In conjunction with its 59(e) motion, and in conformance with the Wise and Jenkins affidavits, the NAACP also filed a motion for leave to amend its complaint. The amended complaint contained the following additional averment:
 
 
 13
 12. Members of the plaintiffs and other black persons represented by the plaintiffs have been injured by the policies and practices described above ..., are being injured by such practices, and are threatened with continued injury by such practices. Members of plaintiffs are interested in and qualified for employment with Harrison, but are not residents of Harrison. Such members of the plaintiffs have been injured by defendant's policy and practice of limiting recruitment to residents of the Town of Harrison wherever possible, by being denied timely information about job vacancies. Members of plaintiffs who are qualified for and interested in employment by Harrison as firefighters and police officers have sought to file applications for such positions with the New Jersey Department of Personnel, which receives and processes applications for Harrison and other municipalities, at or close to the time when Harrison was recruiting for applications for such positions, but were advised by Harrison's agent, the Department of Personnel, that they could not apply to Harrison and other suburban municipalities, because they do not reside there. As non-residents, have been prevented from applying for firefighter and police officer positions with Harrison by defendants' policy and practice of limiting the eligibility for such positions to residents of Harrison, and of hiring only from lists of eligibles which consist of residents of Harrison. At least one member who is qualified for employment as a firefighter and police officer with Harrison and who applied for a position as firefighter in Newark and successfully completed the examination, has applied directly for employment as a firefighter and police officer with Harrison. He and other members have been injured by defendant's practices of limiting eligibility for such positions to residents of Harrison, and have been and will be denied the opportunity to compete for such positions on the basis of their abilities and job related qualifications, rather than the place of residence, so long as Harrison continues to follow that practice and continues to hire police officers and firefighters from lists of eligibles which have been compiled pursuant to that practice.
 
 
 14
 App. at 123-25.
 
 
 15
 On November 30, 1989, the district court informed counsel for the NAACP by letter that it was dismissing its motion for leave to file an amended complaint because the "matter was dismissed on September 27 for lack of standing, and thus, cannot be amended." App. at 129.[6] In addition, the court held, on December 11, 1989, that under local court rules it could only consider the record as it existed at the time of the original hearing when deciding the NAACP's motion for reconsideration. Id. Thus, because the court found that the additional authorities cited by the NAACP did not support its argument that it had standing to bring this Title VII suit, the district court denied the NAACP's motion for reconsideration and rehearing without considering the Wise and Jenkins affidavits. App. at 138-42.
 
 
 16
 The NAACP now appeals from these orders of the district court. In particular, the NAACP argues three issues: (1) that the district court erred in dismissing its original complaint for lack of standing; (2) that the court erred in denying its request for leave to amend the original complaint; and (3) that its motion for summary judgment should have been granted. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 II.
 
 17
 "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). The concept of standing is an integral part of this limitation. Id. In its constitutional dimension, the question of standing is whether the plaintiff has alleged such a personal stake in the outcome of the controversy so as to warrant the plaintiff's invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on the plaintiff's behalf. Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).[7] As the Supreme Court has explained:
 
 
 18
 The Art. III judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally. A federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the putatively illegal action...."Warth, 422 U.S. at 499, 95 S.Ct. at 2205 (quoting from Linda R.S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973)). See also Duke Power Co. v. Carolina Environmental Study Group, 438 U.S. 59, 72, 98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (standing requirement satisfied when plaintiff has suffered "distinct and palpable injury" traceable to the challenged conduct); United States v. S.C.R.A.P., 412 U.S. 669, 689, 93 S.Ct. 2405, 2416, 37 L.Ed.2d 254 (1973) ("pleadings must be something more than an ingenious academic exercise in the conceivable. A plaintiff must allege that he has been or will in fact be perceptibly harmed by the challenged ... action, not that he can imagine circumstances in which he could be affected by the ... action.") (interpreting "injury in fact" requirement under the Administrative Procedure Act); N.A.A.C.P. v. Harris, 607 F.2d 514, 519 (1st Cir.1979) (plaintiff must be suffering some "tangible harm" traceable to the challenged action).
 
 
 19
 Nevertheless, "[i]t has long been settled that '[e]ven in the absence of injury to itself, an association may have standing solely as the representative of its members.' " International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America v. Brock, 477 U.S. 274, 281, 106 S.Ct. 2523, 2528, 91 L.Ed.2d 228 (1986) (quoting Warth, 422 U.S. at 490, 95 S.Ct. at 2197). Of course, the possibility of associational standing does not eliminate the constitutional requirement of a case or controversy, Sierra Club v. Morton, 405 U.S. 727, 738-41, 92 S.Ct. 1361, 1367-69, 31 L.Ed.2d 636 (1972), but the Court has found that under certain circumstances an injury to an association's members will satisfy Article III and allow that organization to litigate in federal court on its members' behalf. Brock, 477 U.S. at 281, 106 S.Ct. at 2528. These circumstances are the following:
 
 
 20
 (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.
 
 
 21
 Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). See also Brock, 477 U.S. at 282, 106 S.Ct. at 2528; Warth, 422 U.S. at 511, 95 S.Ct. at 2211.
 
 
 22
 The district court held that the NAACP lacked standing to litigate its Title VII action because it failed to satisfy prong (a) above.[8] The court explained that: "Plaintiffs have failed to demonstrate that their members would have standing in their own right if they brought this suit ... [because] they have not alleged that their members have applied for jobs within Harrison and were turned down for these positions because they were not residents." App. at 108. See Warth, 422 U.S. at 511, 95 S.Ct. at 2211 ("The association must allege that its members, or any one of them, are suffering immediate or threatened injury as a result of the challenged action of the sort that would make out a justiciable case had the members themselves brought suit.").
 
 
 23
 The NAACP argues that the district court's holding is based on an erroneous view of what a Title VII plaintiff must ultimately establish in order to show injury to rights granted by the Act, and thus what must be alleged in order to maintain a discriminatory refusal to hire action. Brief for Appellee at 26. Specifically, the NAACP relies on International Bhd. of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), for the proposition that a formal application is not a necessary prerequisite for maintaining an action under Title VII. The NAACP contends that once that analytical mistake is corrected the allegations of its original complaint are sufficient to establish associational standing. Brief for Appellee at 25. Moreover, the NAACP points to the affidavits of Jones and Ware, as well as the fifteen employment opportunity questionnaires, see supra note 2, as evidencing specific individuals "who had a personal stake in the litigation." Id. at 25-26.
 
 
 24
 While we agree with the NAACP that a Title VII plaintiff does not necessarily have to allege and prove in all cases that he or she formally applied for the job that was discriminatorily denied in order to establish that rights granted by the Act have been violated, we believe that this fact does not help the NAACP defend its original complaint. A panel of this Court recently faced this question in the disparate treatment context and found that the absence of a formal application for a job is not necessary to establish a prima facie case of discriminatory refusal to hire under Title VII if the plaintiff did everything reasonably possible to make known to the employer the plaintiff's interest in applying for a job. Equal Employment Opportunity Comm'n v. Metal Service Co., 892 F.2d 341, 348-49 (3d Cir.1990) (finding considerable case law support in other jurisdictions for this proposition both in failure to promote contexts and failure to hire contexts; citing cases). Cf. Hailes v. United Air Lines, 464 F.2d 1006, 1008 (5th Cir.1972) (reversing the dismissal of a Title VII disparate treatment complaint for, inter alia, lack of standing where allegations of complaint established that the plaintiff had a real present interest in the job in question and was deterred from applying for it because of a discriminatory advertisement).
 
 
 25
 The Metal Service court also expressed the belief that its decision was consonant with the principles enunciated by the Supreme Court in Teamsters and Furnco Constr. Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). In Teamsters, the Supreme Court allowed nonapplicants to recover seniority relief if they could show that they were deterred by the employer's discriminatory practices from applying for vacant positions and that they would have applied for the job but for those practices. Teamsters, 431 U.S. at 367-68, 97 S.Ct. at 1871. While it is true that in Teamsters, as opposed to the case sub judice, the nonapplicants were already employees of the Title VII violator, the rationale for the Court's decision did not turn on this fact. Rather the principle relied on by the Court was much broader:
 
 
 26
 The effects of and the injuries suffered from discriminatory employment practices are not always confined to those who were expressly denied a requested employment opportunity. A consistently enforced discriminatory policy can surely deter job applications from those who are aware of it and are unwilling to subject themselves to the humiliation of explicit and certain rejection.
 
 
 27
 If an employer should announce his policy of discrimination by a sign reading "Whites Only" on the hiring-office door, his victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs. The same message can be communicated to potential applicants more subtly but just as clearly by an employer's actual practices--by his consistent discriminatory treatment of actual applicants, by the manner in which he publicizes vacancies, his recruitment techniques, ... and even by the racial or ethnic composition of that part of his work force from which he has discriminatorily excluded members of minority groups. When a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as is he who goes through the motions of submitting an application.
 
 
 28
 Teamsters, 431 U.S. at 365-66, 97 S.Ct. at 1870 (footnote omitted). See also Furnco, 438 U.S. at 576, 98 S.Ct. at 2949 (Title VII plaintiffs established prima facie case of discriminatory refusal to hire when they showed, inter alia, that "they did everything within their power to apply for employment"). Furthermore, we note that this Court has already cited the above-quoted passage from Teamsters to support the proposition that "[t]hreatened injury can constitute injury-in-fact [for purposes of establishing standing] where the threat is so great that it discourages the threatened party from even attempting to exercise his or her rights." Howard v. New Jersey Dept. of Civil Serv., 667 F.2d 1099, 1103 (3d Cir.1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384.[9]
 
 
 29
 Yet, even assuming that the principles announced in Teamsters and Metal Service are applicable to disparate impact cases, which the NAACP does, its conclusion that the original complaint is sufficient to establish standing does not follow. The NAACP simply has not alleged or shown that at least one of its members, although not formally applying for municipal employment with Harrison, did everything reasonably possible to make known to Harrison of his or her interest in such employment, see e.g., Metal Service, 892 F.2d at 349, was deterred from applying for a municipal job by Harrison's discriminatory practices and would have applied for the position but for those practices, see Teamsters, 431 U.S. at 367-38, 97 S.Ct. at 1871, or had a real and genuine interest in municipal employment with Harrison but reasonably believed that a formal application would be futile, see Hailes, 464 F.2d at 1008.
 
 
 30
 The NAACP's original complaint simply stated in general terms that Harrison's employment practices "have discriminated and continue to discriminate against blacks, including members of and other persons represented by" the NAACP, and that Harrison's discriminatory practices "constitute a pattern or practice of resistance to the full enjoyment by blacks (including members of and other persons represented by plaintiffs) of their rights to equal employment opportunities without discrimination...." App. at 9, 10-11. In the face of Harrison's motion to dismiss, however, it was proper for the district court to require the NAACP to go beyond these general allegations in the complaint and allege particularized facts supportive of its standing. See Warth, 422 U.S. at 501-02, 95 S.Ct. at 2206-07.[10] See also Doherty v. Rutgers School of Law-Newark, 651 F.2d 893, 898 (3d Cir.1981). But, like the district court, we do not find the particularized allegations of fact in the NAACP's original supporting affidavits from Jones and Ware adequate to support its claim of standing.
 
 
 31
 Reading these materials in the light most favorable to the NAACP, the Jones and Ware affidavits, along with the employment opportunity questionnaires, merely establish that some members of the NAACP are presently interested in the kind of jobs municipal employees of Harrison now occupy, i.e. some members of the NAACP would seriously consider some jobs with Harrison if offered. These materials do not show that any of the NAACP's members ever tried to apply for a municipal job with Harrison, or took any steps, reasonable or not, to try and secure such a job, or, importantly, were deterred from applying for such jobs by any of Harrison's employment practices. Indeed, these materials do not even show that the members involved were aware of Harrison's eligibility policy so as to reasonably believe that a formal application, or reasonable steps to that end, were futile. See Warth, 422 at 518, 95 S.Ct. at 2215 ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute"); Simon, 426 U.S. at 44-45, 96 S.Ct. at 1927 (noting that "[p]rior decisions of this Court establish that unadorned speculation will not suffice to invoke the federal judicial power" and remanding to the district court with instructions to dismiss the complaint because "[s]peculative inferences are necessary to connect [plaintiffs] injury to the challenged actions of [the defendant"); Anderson v. City of Alpharetta, 770 F.2d 1575, 1581-83 (11th Cir.1985).
 
 
 32
 The fact that Harrison may have been utilizing employment practices which had a discriminatory impact on blacks[11] does not, in and of itself, mean for purposes of Title VII that every black who may have been generally interested in jobs similar to those offered by Harrison during this period were thereby injured by those practices. Cf. Teamsters, 431 U.S. at 367-68, 97 S.Ct. at 1871 ("To conclude that a person's failure to submit an application for a job does not inevitably and forever foreclose his entitlement to ... relief under Title VII is a far cry, however, from holding that nonapplicants are always entitled to such relief. A nonapplicant must show that he was a potential victim of unlawful discrimination."). Without showing such a distinct and palpable injury to one of its members, the NAACP, as an association, cannot achieve standing despite its longstanding and sincere interest in rectifying such perceived discrimination. See Simon, 426 U.S. at 40, 96 S.Ct. at 1925 ("Our decisions make clear that an organization's abstract concern with a subject that could be affected by an adjudication does not substitute for the concrete injury required by Art. III"); O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) ("abstract injury is not enough;" it must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury). Cf. Morton, 405 U.S. at 741, 92 S.Ct. at 1369 (Court held that environmental organization lacked standing because there was no evidence that any of the organization's members used the park affected by the development plans approved by the United States Forest Service). Since the NAACP alleged insufficient facts in support of its claim to standing, the district court was justified in rejecting its conclusory complaint allegations. Doherty, 651 F.2d at 898 n. 6.
 
 III.
 
 33
 Our conclusion that the district court did not err in dismissing the NAACP's original complaint does not end the matter before us. As discussed above, along with its motion for rehearing and reconsideration, the NAACP filed a motion for leave to file an amended complaint. The district court denied the motion for leave apparently because the court felt that it no longer had the power to entertain amendments once the original complaint had been dismissed. App. at 129, 139. The NAACP contends that the district court erred in not considering its motion for leave to amend and we agree.
 
 
 34
 The principle is well-settled in this circuit that an order dismissing a complaint without prejudice is not a final and appealable order, see, e.g., Borelli v. City of Reading, 532 F.2d 950, 951-52 (3d Cir.1976) (per curiam) (not final or appealable because "the deficiency may be corrected by the plaintiff without affecting the cause of action"),[12] unless the plaintiff no longer can amend the complaint because, for example, the statute of limitations has run, see, e.g., Green v. Humphrey Elevator and Truck Co., 816 F.2d 877, 878 n. 4 (3d Cir.1987), or the plaintiff has elected to stand on the complaint, see, e.g., Hall v. Pennsylvania State Police, 570 F.2d 86, 89 (3d Cir.1978).[13] See generally Czeremcha v. International Ass'n of Machinists and Aerospace Workers, 724 F.2d 1552, 1554 (11th Cir.1984) ("The Ninth, Sixth and Third Circuits ... distinguish between a dismissal of the complaint and a dismissal of the action, holding that only the latter constitutes a final order, unless the trial court has made clear in dismissing the complaint that the action could not be saved by amendment") (emphasis in the original). As such, "[a]lthough the district court's order [does] not mention amendment, an implicit invitation to amplify the complaint is found in the phrase 'without prejudice.' " Borelli, 532 F.2d at 951.
 
 
 35
 Accordingly, courts have held that grants for leave to amend complaints should be routinely granted to plaintiffs, even after judgments of dismissal have been entered against them, if the appropriate standard for leave to amend under Fed.R.Civ.P. 15(a) is satisfied. See Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); Adams v. Gould, Inc., 739 F.2d 858, 864, 867-869 (3d Cir.1984), cert. denied, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985); District Council 47 v. Bradley, 795 F.2d 310, 321 (3d Cir.1986) (J. Aldisert, dissenting) ("Although a plaintiff loses the right to amend the complaint when judgment is entered on a motion to dismiss, 'the district court is enjoined to "freely" permit amendment as a matter of discretion.' ") (quoting from Kauffman v. Moss, 420 F.2d 1270, 1276 (3d Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970)); Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597-600 (5th Cir.1981); Wilburn v. Pepsi-Cola Bottling Co., 492 F.2d 1288, 1290 (8th Cir.1974); Parks v. "Mr. Ford", 68 F.R.D. 305, 308-09 (E.D.Pa.1975). See generally 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d Sec. 1488 (1990).
 
 
 36
 Indeed, the Supreme Court has instructed that "the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman, 371 U.S. at 182, 83 S.Ct. at 230. Cf. Bradley, 795 F.2d at 316 (reversible error for the district court not to specifically give civil rights plaintiffs leave to amend their complaint to add sufficient factual specificity when dismissing the complaint); Kauffman, 420 F.2d at 1276 (concluding that the district court erred in finding that the doctrine of collateral estoppel barred the civil rights plaintiffs' original complaint but that the complaint was insufficiently pleaded; however, this Court ordered that the district court grant the plaintiff's leave to amend the complaint within a reasonable time under Rule 15(a)).
 
 
 37
 Thus, we find that the district court erred in concluding that it did not have the power to exercise its discretion as to whether the NAACP should be granted leave to amend its complaint. Since we believe that the proposed amendment is not facially meritless, we will vacate the orders denying the NAACP's motions for reconsideration and leave to amend, and remand to the district court for it to exercise its discretion as to whether leave should be granted. See Foman, 371 U.S. at 182, 83 S.Ct. at 230; Adams, 739 F.2d at 864, 867-69. See also Dussouy, 660 F.2d at 597-600.[14],[15]
 
 IV.
 
 38
 In conclusion, we hold that the district court did not err in dismissing the NAACP's original complaint for lack of standing. However, we find that the district court did err in concluding that it could not entertain the NAACP's motion for leave to amend the complaint because of its earlier dismissal order. Consequently, we will vacate the district court's orders denying the NAACP's post-dismissal motions and remand the case to the district court for it to exercise its discretion as to whether an amendment of the complaint is appropriate under the circumstances of this case. Each party to bear its own costs.
 
 
 
 [1]
 No individual member of the NAACP joined in the lawsuit. The complaint sought merely injunctive relief
 
 
 [2]
 In a supplemental affidavit, Ware states that of the thirty-five respondents, fifteen indicated an interest in employment with Harrison of which nine, including himself, are members of the NAACP
 
 
 [3]
 Harrison argued that the Commissioner was an indispensable party because it is the Commissioner, not Harrison, who distributes applications for municipal employment, administers tests, and communicates residency requirements to applicants. App. at 56. This part of the case is not an issue on appeal
 
 
 [4]
 In its order of dismissal, the district court also ruled that the NAACP's "motions for summary judgment and other relief are denied." App. at 111. To the extent that this was an adjudication on the merits of the NAACP's summary judgment motion, which we do not believe the district court intended, see App. at 104, the court erred since it had already found that it lacked jurisdiction over this action
 
 
 [5]
 Although this motion was entitled a "MOTION FOR REHEARING AND RECONSIDERATION" and did not mention Rule 59(e), it was served within 10 days after the entry of the judgment of dismissal and clearly was an attempt by the NAACP to alter or amend the judgment. Under these circumstances, such motions are treated as Rule 59(e) motions. See Burnam v. Amoco Container Co., 738 F.2d 1230, 1232 (11th Cir.1984); Kelly v. Delaware River Joint Comm'n, 187 F.2d 93, 94-95 (3d Cir.), cert. denied, 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614 (1951) (dictum); Durham v. Fleming Cos., 727 F.Supp. 179, 180 (E.D.Pa.1989). Both parties agree with this characterization. See Brief of Appellant, at 2; Brief of Appellee, at 6
 
 
 [6]
 The district court later reaffirmed this letter ruling in its Opinion denying the NAACP's motion for reconsideration. App. at 139
 
 
 [7]
 We note two things. First, Title VII allows a suit to be initiated "by a person claiming to be aggrieved" under the Act. This Court has concluded that those words show "a congressional intention to define standing as broadly as is permitted by Article III of the Constitution." Hackett v. McGuire Bros., Inc., 445 F.2d 442, 446 (3d Cir.1971). See also Trafficante v. Metropolitan Life Ins. Co., 409 U.S. 205, 209, 93 S.Ct. 364, 366-67, 34 L.Ed.2d 415 (1972) (citing Hackett approvingly for this proposition). Second, along with the constitutional dimension, the Supreme Court has recognized prudential limitations on the exercise of federal-court jurisdiction in this context. See Warth, 422 U.S. at 499-500, 95 S.Ct. at 2205-06. Because of our disposition of this case we need not explore these nonconstitutional limitations and their possible effects on this case
 
 
 [8]
 In its Opinion, the district court notes that the NAACP appears to have met prongs (b) and (c). App. at 108. Because we affirm the district court's holding that prong (a) is not met, we do not decide whether the requirements of the other prongs have been satisfied
 
 
 [9]
 Despite the NAACP's assertions to the contrary, we do not believe that the district court's Opinions are necessarily inconsistent with what we have stated so far as to the requirements that a Title VII claimant must meet in order to maintain an action under the Act. For example, in rejecting the NAACP's motion for reconsideration, the court held: "Plaintiffs have not alleged in their complaint, or any other officially or unofficially filed document that any individual NAACP member sought employment in Harrison, and was hindered from applying for a job in Harrison because of the residence only requirements." App. at 140 (emphasis added)
 
 
 [10]
 The Supreme Court in Warth explained:
 For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party. At the same time, it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.
 Warth, 422 U.S. at 501-02, 95 S.Ct. at 2206-07 (citation omitted). See also Simon, 426 U.S. at 37 n. 15, 96 S.Ct. at 1924 n. 15 ("The affidavits submitted by the respondents merely supported the allegations of the complaint relative to establishing standing, rather than going beyond them. Thus, the standing analysis is no different, as a result of the case having proceeded to summary judgment, than it would have been at the pleading stage.").
 
 
 [11]
 Of course, we express no opinion as to the merits of the NAACP's complaint. That determination is for the district court in the first instance if the court allows the NAACP to amend its complaint
 
 
 [12]
 Compare Manze v. State Farm Ins. Co., 817 F.2d 1062, 1064 (3d Cir.1987) (where district court dismissed complaint with prejudice the court of appeals possessed jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1982))
 
 
 [13]
 Neither of these exceptions is relevant here
 
 
 [14]
 We note that this Court has decided that the factors to be considered in determining whether leave should be granted to file an amended complaint under Rule 15(a) are the same as for determining whether the accompanying Rule 59(e) motion should be granted. Adams, 739 F.2d at 864. See also Dussouy, 660 F.2d at 597 n. 1; Nutis v. Penn Merchandising Corp., 615 F.Supp. 486, 487 (E.D.Pa.1985)
 
 
 [15]
 Because a decision on the NAACP's motion for summary judgment must await a determination by the district court as to whether leave to amend should be granted, we do not reach the NAACP's third issue on appeal. See generally supra note 4