**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4849

FRANK RODRIGUEZ TORRES, a/k/a
Frank Rodriguez,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-98-10-5-BO)

Argued: January 24, 2000

Decided: May 30, 2000

Before WIDENER, WILLIAMS, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Gregory John Ramage, Raleigh, North Carolina, for
Appellant. Banumathi Rangarajan, Assistant United States Attorney,
Raleigh, North Carolina, for Appellee. **ON BRIEF:** Janice McKenzie
Cole, United States Attorney, Anne M. Hayes, Assistant United States
Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The defendant, Frank Rodriguez Torres, appeals his conviction and 63-month prison sentence for conspiring unlawfully to distribute and possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). We affirm the district court's conviction and sentence.

I.

Torres worked at the New York Auto Clinic (Auto Clinic), an auto shop which provides a variety of electrical services to its customers. In addition to installing car stereos and other electrical equipment, Torres installed secret compartments within automobiles. Testimony at trial revealed that drug dealers use these compartments to avoid detection of guns, drugs, and money by law enforcement officers.

Some time in 1996, Torres met Shawn Page* who came to the Auto Clinic for service on his car. Upon learning that Torres installed secret compartments, Page discussed installation and details of the compartments with Torres. During one conversation, Torres showed Page work he had completed on another customer's car. Referring to that customer as a drug dealer, Torres demonstrated how he had installed secret compartments and flip-license plates to avoid law enforcement detection.

By May of 1996, Page was involved in the drug distribution business selling powder cocaine. Coby Geter and Rickey Congleton testified that they would buy drugs from Page in New York and then transport the drugs to North Carolina. By May of 1997, Congleton and Geter purchased cocaine from Page every other week.

_____

*Page was also indicted with Torres. He pleaded guilty to the conspiracy charge and cooperated with the government.

2

Between 1996 and 1997, Congleton traveled to New York on several occasions. He was introduced to Torres and visited the Auto Clinic several times. During one of these conversations, Torres informed Congleton that the best type of car for a secret compartment was a 1989 Acura because it could hold eight to nine kilograms of cocaine.

Geter also became interested in having a secret compartment installed in his automobile. Geter testified that he needed a secret compartment to transport drugs, guns, and money. Geter was then introduced to Torres. Geter testified that he and Torres spoke about installation of a secret compartment and that Geter told Torres he needed the compartment to hold one kilogram of cocaine. The government produced evidence that Torres installed this type of compartment in Geter's car. After installation, Geter returned to North Carolina where he was arrested and agreed to cooperate with the government.

On July 17, 1997, Page picked up Geter's car from Torres at the Auto Clinic. Also on July 17, 1997, Torres spoke with Geter on the telephone and indicated that the compartment could possibly hold two kilograms of cocaine. Geter told Torres that he was going to have a driver use the car and the compartment to deliver cocaine from New York to North Carolina.

In the district court, the government presented evidence that Geter's car was eventually picked up for return to North Carolina by Kristian Thomas. Thomas, who sold drugs for both Geter and Congleton, planned to use the new secret compartment to bring back one-half kilogram of cocaine at the request of Congleton. However, federal agents stopped Thomas in the Raleigh-Durham airport in North Carolina and seized the money that was to be used to purchase the cocaine. Nevertheless, Thomas flew to New York, picked up Geter's car, and drove it back to North Carolina.

On January 21, 1998, Torres was indicted and charged with conspiracy to distribute and possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. After being found guilty by a jury, Torres filed a motion for judgment of acquittal or a new trial claiming that there was insufficient evidence to sustain his conviction or to

establish venue in the Eastern District of North Carolina. The district court denied this motion finding that the government had proffered substantial evidence to show that: (1) Geter, Congleton, Page, and Thomas agreed to distribute and possess with intent to distribute cocaine; (2) Torres knew Geter, Congleton, and Page were drug dealers; (3) Torres knowingly joined the conspiracy by agreeing to install a compartment with the explicit purpose of transporting cocaine; and (4) at least one act in furtherance of the conspiracy was committed in North Carolina. The district court found that this evidence was sufficient for a reasonable jury to find Torres guilty of the conspiracy charge beyond a reasonable doubt.

The district court also found that the government presented sufficient evidence to establish venue. Specifically, the district court noted that Congleton and Geter were involved in the cocaine business in Raleigh, North Carolina, and testimony showed the drugs were transported from Page in New York to North Carolina. Also, the car with the secret drug compartment was transported from New York to North Carolina. The district court concluded that because at least one act in furtherance of the conspiracy had been committed in the Eastern District of North Carolina, venue was proper.

Defendant appeals the denial of his motion for judgment of acquittal and the sentence entered by the district court.

II.

Because defendant's appeal requires review under various standards, we will address each point appealed separately.

A.

Defendant first claims that there is insufficient evidence to sustain a conviction as to the conspiracy charge and that the district court erred in denying his motion for judgment of acquittal. "The verdict of the jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942).

The defendant contends that while he agreed to install a compartment large enough to hold one kilogram of cocaine, he never possessed, distributed, transported, or saw cocaine and he had no knowledge that Geter bought cocaine from Page or that Geter was involved in the cocaine trade with Congleton and Thomas. Defendant contends that he only knew Geter wanted a secret compartment. However, we are of opinion that there is substantial evidence, viewing the same most favorably to the government, to support the guilty verdict.

A defendant may be proven guilty of a conspiracy by wholly circumstantial evidence. United States v. Burgos , 94 F.3d 849, 858 (4th Cir. 1996). Further, "a defendant may be convicted of conspiracy with little or no knowledge of the entire breadth of the criminal enterprise." Burgos, 94 F.3d at 858. To prove a defendant's connection to the conspiracy beyond a reasonable doubt, "the Government need not prove that the defendant knew the particulars of the conspiracy or all of his coconspirators." Burgos, 94 F.3d at 858. A defendant may be convicted of conspiracy "without full knowledge of all of [the conspiracy's] details, . . . if he joins the conspiracy with an understanding of the unlawful nature thereof and willfully joins in the plan on one occasion . . . even though he played only a minor part." United States v. Roberts, 881 F.2d 95, 101 (4th Cir. 1989).

In this case, the evidence indicates that Page introduced Torres to Congleton and Geter. It is undisputed that Congleton, Geter, and Page conspired to possess illegal drugs with the intent to distribute them. There were multiple discussions between Torres, Congleton, Geter, and Page about secret compartments and the amount of cocaine that those compartments could hold. Most importantly, Torres actually installed a secret compartment in Geter's car. This compartment was manufactured with the purpose of allowing Geter to carry at least one kilogram of cocaine without being detected by law enforcement agents. Geter discussed with Torres bringing two kilograms of drugs in the car's secret compartment from New York to North Carolina. And finally, Thomas intended to use the secret compartment to bring cocaine to North Carolina for Congleton and, in fact, did bring the car back to North Carolina.

It is noteworthy that the defendant acknowledges that "[t]he Government presented substantial evidence that the Government's four

5

lay witnesses had been co-conspirators in a conspiracy to distribute cocaine." Br. p.11. So the question is whether Torres became a member of that conspiracy. Those four lay witnesses were Geter, Congleton, Page and Thomas. Thomas flew from North Carolina to New York, picked up Geter's BMW from Page, with the secret compartment for transporting drugs installed by Torres already in the car, and drove the car to North Carolina. The fact that no drugs were transported on this trip was only due to the fact that the FBI had seized $13,000 from Thomas with which sum he had intended to buy drugs. Page had delivered Geter's BMW to Torres so that the secret compartment could be installed, and Page picked up Geter's BMW from Torres. Page took Geter to the Auto Clinic to meet Torres, where Geter and Torres discussed the installation of a secret compartment in Geter's BMW. Geter told Torres that the secret compartment needed to hold a kilogram of cocaine. Geter and Torres agreed on the price of the installation of the secret compartment and a stereo. Page and Torres had talked about secret compartments in cars such as the one involved here.

While we have just recited only a part of the evidence in the case, and this acknowledged by the defendant, the evidence before the jury fully supports the conclusion that Torres participated in the conspiracy of Geter, Congleton, Page and Thomas, which was dealing in drugs in North Carolina and bringing the drugs to North Carolina from New York.

B.

Defendant next appeals the district court's denial of his motion for judgment of acquittal based on insufficient proof of venue. Defendant claims that the government did not proffer sufficient evidence to establish venue in the Eastern District of North Carolina. In determining if venue is appropriate, we review the evidence in the light most favorable to the government to determine whether it proved by a preponderance of the evidence that the crime charged occurred within the district. United States v. Rinke, 778 F.2d 581, 584 (10th Cir. 1985).

Since we decide that the evidence supports the conviction of Torres in the conspiracy to sell drugs by his alteration of Geter's BMW to install a secret compartment for the transport of drugs by an acknowl-

6

edged conspirator, when Geter's BMW was picked up in New York by Page, a member of the conspiracy, and taken to North Carolina by Thomas, another member of the conspiracy, having been fitted as a drug transporting vehicle, the act of taking the car prepared by Torres from New York to the Eastern District of North Carolina is sufficient proof of venue in the Eastern District of North Carolina by a preponderance of the evidence. Other related acts of the conspirators in North Carolina only add to the proof.

C.

The remainder of defendant's claims on appeal concern sentencing issues. Defendant asserts that the district court erred in overruling his objection to being accountable for 500 grams of cocaine. Additionally, defendant argues that he should have received a downward adjustment for a mitigating role in the conspiracy.

The quantity of drugs attributable to a defendant is an issue of fact that we review for clear error. United States v. Mark, 943 F.2d 444, 450 (4th Cir. 1991). The government need only prove the quantity of drugs involved in a conspiracy by a preponderance of the evidence. United States v. Goff, 907 F.2d 1411 (4th Cir. 1990).

As we have previously held, "[a] defendant convicted of conspiracy should be sentenced not only on the basis of his conduct, but also on the basis of conduct of co-conspirators in furtherance of the conspiracy that was known to the defendant or reasonably foreseeable to him." United States v. Williams, 986 F.2d 86, 90 (4th Cir. 1993). Here, testimony demonstrated that Congleton and Geter intended to buy one-half kilogram (500 grams) of cocaine from Page. Thomas intended to transport this cocaine from New York to North Carolina using the secret compartment Torres installed. Further, Torres engaged in various conversations with his co-conspirators regarding the amounts of cocaine that could be placed in the compartment for transport. This evidence is more than sufficient to satisfy the government's burden of showing that Torres could reasonably foresee that his co-conspirators would use the compartment for its intended purpose; to transport cocaine undetected. Because the record indicates Torres's co-conspirators planned to transport, in the secret compartment, 500 grams of cocaine, to the knowledge of Torres, we are of

7

opinion that the district court did not err in holding Torres accountable for the 500 grams of cocaine.

We are also of opinion that the district court did not err in refusing to grant Torres a sentencing reduction for having a mitigating role in the offense. We review the district court's findings regarding the defendant's role in the offense under the clearly erroneous standard. United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). Torres is entitled to a reduction in sentence under Section 3B1.2(b) of the United States Sentencing Guidelines if he was a minor participant in the criminal activity. In light of the fact that the overwhelming evidence shows that Torres purposely designed a compartment for Geter with the express purpose of transporting and concealing illegal drugs, we do not find that the district court was clearly erroneous in denying Torres's motion. While the defendant may not have transported the drugs himself, he provided the means and did so in a way designed to thwart the detection of illegal drugs. We are of opinion that Torres's actions are in no way minor, and we affirm the district court's denial of a sentence reduction.

III.

The judgment of the district court is accordingly

AFFIRMED.