**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-4332
_____

MARIO ALBERTO LOPEZ GARZA,
The Executor of the estate of Hans Jorg Schneider Sauter,
Appellant

v.

CITIGROUP INC.
_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. Civ. No. 1-15-cv-00537)
District Judge:  Honorable Sue L. Robinson

_____

Submitted under Third Circuit L.A.R. 34.1(a)
on September 27, 2017

Before:  AMBRO, KRAUSE, *Circuit Judges*,
and CONTI,[*] *Chief District Judge*

(Opinion filed: February 2, 2018)
_____

OPINION[**]
_____

[*]  Honorable Joy Flowers Conti, Chief Judge of the United States District Court
for the Western District Court Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

KRAUSE, *Circuit Judge.*

This appeal concerns a transnational dispute over hundreds of millions of dollars allegedly due the estate of Mexican national Hans Jorg Schneider Sauter ("the Estate"), for which Appellant Mario Alberto Lopez Garza serves as executor. The Estate filed in the District Court a one-count complaint ("the Complaint") demanding an accounting by Appellee Citigroup Inc. on the premise that Citigroup controls the bank hosting the accounts with the disputed funds. Whatever complexities there may be in the peripheries of this litigation, the questions before us in the Estate's appeal are straightforward: (1) did the District Court err when it granted Citigroup's motion for judgment on the pleadings; and (2) did the District Court abuse its discretion when it refused to grant leave to amend, both before dismissing the Complaint and later in denying the Estate's motion for reconsideration? Answering both questions in the negative, we will affirm.[1]

I.

According to the Complaint, Schneider Sauter was a Mexican citizen and businessman involved in currency trading and real estate. Apparently Mexican authorities believed that Schneider Sauter was engaged in illicit activity, and he served time in a Mexican prison. After Schneider Sauter died in 2008, Garza was appointed by a probate court in Mexico to serve as executor of the Estate.

---

[1] We separately address Citigroup's cross-appeal, which concerns only the District Court's order granting in part Citigroup's motion for relief under Fed. R. Civ. P. 41(d).

2

Through his investigation of assets available to the Estate, Garza allegedly uncovered three documents indicating that substantial funds—no less than $300,000,000—were on deposit in accounts held in Schneider Sauter's name at Banco Nacional de Mexico S.A. integrante del Grupo Financiero Banamex ("Banamex"), Citigroup's "full-service bank subsidiary" in Mexico.  JA 44.  After Garza obtained several orders from the Mexican probate court directing Banamex to turn over to the Estate all funds in the Schneider Sauter accounts, Banamex instituted collateral *amparo* proceedings to challenge the legal authority of the probate court.[2]

Stymied in the Mexican court system, the Estate brought the Banamex litigation to the United States courts, first by filing suit in the Southern District of New York, and then by filing the Complaint in the District of Delaware.  The only defendant named in the Complaint was Citigroup.  Citing the North American Free Trade Agreement ("NAFTA"), Dec. 17, 1992, *reprinted in* 32 I.L.M. 296-456, 605-800 (1993), the Expedited Funds Availability Act ("the EFAA"), 12 U.S.C. §§ 4001-4010, and Mexican law, the Estate alleged that Citigroup possesses information regarding the Banamex accounts because it "is required . . . to oversee, control and supervise the activity of its subsidiary banks."  JA 46.  A single count in the Complaint demanded an "accounting"

---

[2] As the Ninth Circuit Court of Appeals has explained it, "the *amparo* is a highly complex legal institution . . . somewhat similar to *habeas corpus* and, *inter alia,* is the means to review and annul unconstitutional judicial decisions."  *United States v. Fowlie*, 24 F.3d 1059, 1064 (9th Cir. 1994) (emphasis in original).  Citigroup represents that the *amparo* proceedings are still pending.

that would permit Garza to "ascertain all transfers of funds into and out of the bank accounts formerly belonging to the decedent." JA 47.

Citigroup answered the Complaint and then filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) or, in the alternative, for a stay of all federal litigation pending resolution of the proceedings in Mexico. In its Rule 12(c) motion and oral argument before the District Court, Citigroup argued under Delaware law that an accounting is strictly a remedy and, thus, cannot be pleaded as a stand-alone claim. In any event, Citigroup contended, the Estate failed to sufficiently plead the fiduciary relationship between Schneider Sauter and Citigroup necessary to support an accounting action. In response, the Estate urged the District Court that the Complaint stated a viable demand for an accounting and, alternatively, that leave to amend should be granted.

The District Court granted Citigroup's motion and dismissed the Complaint with prejudice. The District Court agreed with Citigroup that the Estate's "failure to plead any underlying substantive cause of action or fiduciary relationship renders its claim for an accounting legally invalid on its face under Delaware law." JA 19. It concluded that the Complaint revealed no basis to impute to Citigroup any duty that Banamex—as host of the accounts with the disputed funds—might owe the Estate. Deeming the Estate's pleading defects to be incurable, the District Court denied leave to amend on futility grounds.

The District Court also denied reconsideration, rejecting the Estate's arguments that it should have been granted leave to amend with unspecified "additional facts," JA

4

284, and that NAFTA provided a basis for a fiduciary relationship between the Estate and Citigroup. This appeal followed.

## II.[3]

On appeal, the Estate argues, first, that the District Court erred in granting a motion for judgment on the pleadings because the Complaint adequately stated a claim for an accounting, and, second, that even if the Complaint were in any way defective, the District Court "should have granted the Estate an opportunity to amend [it]." Appellant's Br. at 39.[4] Neither argument is persuasive.

A. *The District Court's Ruling on the Motion for Judgment on the Pleadings.*

A party may move for judgment on the pleadings after the pleadings are closed so long as the timing of the motion does not delay trial. Fed. R. Civ. P. 12(c). "A motion

---

[3] The District Court had subject matter jurisdiction under 28 U.S.C. § 1332(a)(2). We have appellate jurisdiction under 28 U.S.C. § 1291. We review the District Court's order granting Citigroup's motion under Rule 12(c) de novo, *see In re Fosamax (Alendronate Sodium) Prod. Liab. Litig. (No. II)*, 751 F.3d 150, 165 n.11 (3d Cir. 2014), and "may affirm on any grounds supported by the record." *Maher Terminals, LLC v. Port Auth. of N.Y. & N.J.*, 805 F.3d 98, 105 n.4 (3d Cir. 2015). The District Court's order denying the Estate's motion for reconsideration is reviewed for abuse of discretion, *see Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809 F.3d 746, 753 (3d Cir. 2016), as is its refusal to grant leave to amend. *See U.S. ex rel. Petratos v. Genentech Inc.*, 855 F.3d 481, 486 (3d Cir. 2016).

[4] As a threshold matter, the Estate asserts that the District Court misapplied the Rule 12(c) standard when it failed to accept the veracity of certain allegations in the Complaint. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, there is no indication that the District Court failed to accept as true all well-pleaded allegations in the Complaint. In any event, accepting those allegations as true, we reach the same conclusion as the District Court on de novo review.

for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). Accordingly, judgment on the pleadings is proper where the plaintiff's factual allegations, taken as true and viewed in the light most favorable to the plaintiff, are not sufficient to state "a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The federal pleading standard guides our assessment of whether the Estate's Complaint sets forth a viable claim under applicable state law. "As a federal court sitting in diversity, we 'are required to apply the substantive law of the state whose laws govern the action.'" *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008) (quoting *Robertson v. Allied Signal*, 914 F.2d 360, 378 (3d Cir. 1990)). Here, the District Court chose to apply the law of Delaware, and the parties do not contest that choice on appeal.

Delaware law provides a right to an accounting in specified situations, only one of which is potentially relevant here, *i.e.*, "where a fiduciary relationship exists between the parties and a duty rests upon defendant to render an account." *Pan Am. Trade & Inv. Corp. v. Commercial Metals Co.,* 94 A.2d 700, 701 (Del. Ch. 1953). Citigroup contends that, even assuming an accounting demand can be maintained under Delaware law as a stand-alone claim,[5] the Estate failed to sufficiently plead the requisite fiduciary

---

[5] The Delaware Supreme Court characterizes an accounting as an "equitable remedy." *See, e.g.*, *Rebstock v. Lutz,* 158 A.2d 487, 489 (Del. 1960). And the Delaware

6

relationship. We agree that no such relationship is apparent from the facts in the Complaint, and the District Court therefore properly granted Citigroup's motion for judgment on the pleadings.

The thrust of the Estate's main argument for recognizing Citigroup as a fiduciary flows from a critical assumption built into the Complaint: that there is a duty owed by Banamex to Schneider Sauter as its depositor. From that relationship, the Estate would extrapolate a duty to Citigroup on the ground that Banamex is allegedly a "subsidiary bank[]." JA 46. The problem with this theory is that, under Delaware law, "the relation between a bank and a mere general depositor of funds is that of debtor and creditor, and is in no sense of a fiduciary nature." *Tharp v. St. Georges Tr. Co.*, 34 A.2d 253, 255 (Del. Ch. 1943); *cf. Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988) ("Creditor-debtor relationships such as that between the Bank and Paradise rarely are found to give rise to a fiduciary duty."). And if Schneider Sauter is not owed a fiduciary duty by Banamex, then *a fortiori* there is no such duty that can be imputed to Citigroup as Banamex's alleged corporate parent. *See Greco v. Univ. of Delaware*, 619 A.2d 900, 903 (Del. 1993) (imputing liability requires underlying liability).

---

Code does the same. *See* Del. Code Ann. tit. 12, § 3581(b)(4) (2017). The Delaware Supreme Court has not yet addressed whether a demand for an accounting may be pleaded as a stand-alone form of action, but we need not predict how this state law issue ultimately will be resolved because, even assuming an accounting demand can be pleaded without a companion claim, the Estate's Complaint was properly dismissed on Rule 12(c) grounds.

7

The Estate's arguments to the contrary are unavailing. Even if the Estate were correct that it is owed a fiduciary duty from Banamex, that duty could not pass to Citigroup without piercing the legal veil that generally shields a parent corporation from the acts of its subsidiaries. *See United States v. Bestfoods*, 524 U.S. 51, 61 (1998). "Persuading a Delaware court to disregard the corporate entity," however, "is a difficult task," *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999) (citation and internal quotations omitted), and, as Citigroup correctly points out, the factual allegations in the Complaint, taken as true, reveal not "Citigroup's control of Banamex's day-to-day operations or a complete disregard of the corporate form between the two entities," but instead "the expected level of supervision by a parent company of its foreign subsidiary." Appellee's Br. at 28. Thus, the District Court properly determined that the Complaint lacked factual allegations necessary to support veil-piercing under Delaware law. *See Outokumpu Eng'g Enter., Inc. v. Kvaerner EnviroPower, Inc.*, 685 A.2d 724, 729-30 (Del. Super. Ct. 1996) (discussing alter-ego and agency theories of liability for corporate parent).

The Estate is no more successful with its argument that the sources of law cited in the Complaint—from jurisdictions other than Delaware—show Citigroup owed a fiduciary duty to Schneider Sauter *directly*, rather than through the conduit of Banamex. The NAFTA provision cited in the Complaint imposes obligations on parties to the treaty with respect to their treatment of foreign financial institutions and investors in those institutions; it does not impose new obligations on banks to their customers. *See* 32

8

I.L.M. at 657-63; *cf. LeClerc v. Webb*, 419 F.3d 405, 412 n.12 (5th Cir. 2005) (individual citizen of Canada was not a "beneficiary of NAFTA").[6]  For its part, the EFAA merely requires that "depository institution[s]" make available for prompt withdrawal their customers' deposited funds.  *See Bank One Chicago, N.A. v. Midwest Bank & Tr. Co.*, 516 U.S. 264, 267 (1996).  It thus has no bearing here, insofar as the Complaint alleged that the disputed funds had been deposited into accounts with Banamex, not Citigroup.  Finally, the Estate posits that Mexican law "require[s] banks to turn over funds immediately to an Estate in the event of the death of an account holder," JA 45, but conclusory legal assertions need not be credited without supporting factual allegations in reviewing a motion under Rule 12(c), *see Iqbal*, 556 U.S. at 679, and, even if credited, the Mexican law described by the Estate would appear to impose an obligation only on the bank holding the decedent's funds—again, Banamex, not Citigroup.

In sum, even accepting as true the factual allegations in the Complaint and considering the various sources of law to which it cites, the Estate failed to plead a viable accounting action against Citigroup under Delaware law.  The District Court thus did not err when it granted Citigroup's motion for judgment on the pleadings.

---

[6] Moreover, contrary to the Estate's argument in the District Court that NAFTA permits it "to bring suit in the United States against the party that has sought and obtained Mexican permission to operate in Mexico, namely Citi," JA 284, federal law expressly disclaims the availability of a private right of action under NAFTA.  *See* 19 U.S.C. §

B. *The District Court's Denial of Leave to Amend.*

In arguing that leave to amend should have been granted, the Estate attacks both the District Court's pre-judgment denial of leave to amend and its refusal to reconsider. We perceive no error in either of those rulings.

The Estate requested leave to amend, as an alternative to dismissal, in its opposition to Citigroup's Rule 12(c) motion and at oral argument on the motion. It later argued in support of reconsideration that the District Court erred when it dismissed the Complaint with prejudice "rather than granting Plaintiff an opportunity to amend." JA 283. At none of those junctures, however, did the Estate proffer a proposed amended complaint or even describe with any detail the substance of the putative pleading.[7] Our precedent is clear that district courts act within the bounds of their discretion when they reject undeveloped requests for leave to amend that, like the Estate's, are unaccompanied by a proposed amended pleading. *See, e.g.*, *Fletcher-Harlee Corp. v. Pote Concrete*

---

3312(c).

[7] Indeed, the Estate did not submit a proposed amended complaint until the filing of its reply brief in support of reconsideration, a submission the District Court was well within its discretion to refuse to consider. *See* D. Del. LR 7.1.5(a) (2010). Although the District Court signed off on a stipulation between the parties permitting the Estate to file a reply in this case, its willingness to consider the Estate's rebuttal to arguments raised in Citigroup's responsive briefing was not an open invitation to submit an amended complaint at that late stage and does not excuse the Estate's untimely submission. Moreover, the District Court's Local Rules require that a party seeking leave to amend attach to his request *two* documents: "[t]he proposed pleading as amended" and "[a] form of the amended pleading which shall indicate in what respect it differs from the pleading which it amends, by bracketing or striking through materials to be deleted and underlining materials to be added." D. Del. LR 15.1 (2010). The Estate failed to attach

*Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007); *Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000). For that reason alone, the District Court did not abuse its discretion when it refused to grant leave to amend before judgment or upon the Estate's motion for reconsideration.

A proper motion for reconsideration under Fed. R. Civ. P. 59(e) must be based on one of three grounds: "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam). None pertain here. The Estate's motion for reconsideration provided nothing in the way of new or overlooked law or facts to impugn the District Court's ruling that amendment would be futile. And, in fact, the District Court, going beyond what was required in this case, carefully considered the Estate's argument that a fiduciary relationship existed between the Estate and Citigroup, as well as the extra-pleading evidence offered in support of that argument, before it granted Citigroup's Rule 12(c) motion and denied the Estate's motion for reconsideration. The District Court's thorough analysis confirms that there was no error—much less "clear error" or "manifest injustice"—in its conclusion on reconsideration that leave to amend would be futile because the Estate could not adequately plead a plausible claim for relief. *See Twombly*, 550 U.S. at 570.

The cases cited by the Estate are not to the contrary. In *United States ex rel. Customs Fraud Investigations v. Victaulic Co.*, 839 F.3d 242 (3d Cir. 2016), the district

---

the latter document to its reply.                    11

court granted the defendant's Rule 12(b) motion "with prejudice, without any discussion of why [the relator-plaintiff] should not be afforded the opportunity to amend its complaint to solve any perceived deficiencies." *Id.* at 247. By contrast, the District Court here explained in its opinion why it was granting Citigroup's motion with prejudice and denying leave to amend. Additionally, in *Victaulic*, after the relator-plaintiff's complaint was dismissed, it promptly filed a motion for leave to amend that included "a proposed First Amended Complaint." *Id*. Here, however, the Estate, in moving for reconsideration after dismissal, merely alluded to unspecified "additional record evidence" that it obtained "[b]ased on ongoing investigation," JA 284, and it failed to submit a timely proposed amended pleading.

*Newark Branch, NAACP v. Town of Harrison, New Jersey*, 907 F.2d 1408 (3d Cir. 1990), is even farther afield. In that case, the district court mistakenly believed "that it no longer had the power to entertain amendments once the original complaint had been dismissed" for lack of standing. *Id.* at 1416. We vacated the district court's order denying leave to amend because: (1) an adverse judgment, even one based on a determination that the case is non-justiciable, is not a complete impediment to amendment; and (2) the NAACP's post-judgment motion for leave to amend was accompanied by a "proposed amendment" that was "not facially meritless." *Id.* at 1417. In contrast, the District Court here did not misunderstand the scope of its power to grant leave to amend and, again, the Estate failed to accompany its requests for such relief with a properly formulated proposed amended pleading.

12

In the last case cited by the Estate on this point, *Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002), we held that, notwithstanding the enactment of the Prison Litigation Reform Act, 42 U.S.C. § 1997e, *et seq.*, pro se plaintiffs proceeding in forma pauperis "who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile." *Id.* at 114. The applicability of the sua sponte amendment rule, however, is cabined to cases like *Grayson*; "[i]n non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint." *Fletcher-Harlee*, 482 F.3d at 252-53.[8]

In sum, under applicable precedent and the standard for motions under Rule 59(e), the District Court did not abuse its discretion in refusing to grant leave to amend and denying reconsideration.

III.

For the foregoing reasons, the District Court's orders dismissing the case and denying reconsideration will be affirmed.

---

[8] In addition to *Victaulic*, *Newark Branch, NAACP*, and *Grayson*, the Estate's opening brief cited non-precedential opinions of this Court. As we have pointed out on multiple occasions, however, such opinions "'are not regarded as precedents that bind the court because they do not circulate to the full court before filing.'" *In re Grand Jury Investigation*, 445 F.3d 266, 276 (3d Cir. 2006) (quoting 3d Cir. I.O.P. 5.7 (2002)); *accord Watson v. Rozum*, 834 F.3d 417, 427 (3d Cir. 2016).