77 F.3d 1270
 64 USLW 2628, 19 Employee Benefits Cas. 2864
 Jerry CANNON, Individually and on behalf of the Estate of
Phyllis Cannon, Deceased, Plaintiff-Appellant,
v.
GROUP HEALTH SERVICE OF OKLAHOMA, INC., d/b/a Blue Cross &
Blue Shield of Oklahoma; GHS Health Maintenance
Organization, Inc., d/b/a Blue Lincs
HMO, Defendants-Appellees.
 No. 94-6451.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 28, 1996.
 
 Appeal from the United States District Court for the Western District of Oklahoma, D.C. No. CIV-94-159-A.
 Larry Alan Tawwater (Jo L. Slama and Terry T. Wiens with him on the briefs), McCaffrey & Tawwater, Oklahoma City, Oklahoma, for Plaintiff-Appellant.
 Mark E. Schmidtke (Page Dobson and J.R. "Randy" Baker, Holloway Dobson Hudson Bachman Alden Jennings Robertson & Holloway, Oklahoma City, Oklahoma, with him on the briefs), J.R. Ebenstein Consultants, Valparaiso, Indiana, for Defendants-Appellees.
 Before PORFILIO, and BRORBY, Circuit Judges; and HOLMES, District Judge.*
 JOHN C. PORFILIO, Circuit Judge.
 
 
 1
 Jerry Cannon filed this action against Group Health Service of Oklahoma, Inc., d/b/a Blue Cross & Blue Shield of Oklahoma, and GHS Health Maintenance Organization, Inc., d/b/a Blue Lincs HMO (insurers) to recover damages for the death of his wife, Phyllis Cannon. After removal to federal court, the district court granted summary judgment for the insurers, holding Mr. Cannon's claims were preempted by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 to 1461. The district court also denied Mr. Cannon's motion to amend his complaint, holding his new claims could not withstand a motion to dismiss. Mr. Cannon now appeals. Although moved by the tragic circumstances of this case and the seemingly needless loss of life that resulted, we conclude the law gives us no choice but to affirm.
 
 
 2
 * Phyllis Cannon was diagnosed with acute myeloblastic leukemia in September of 1991. She was treated with chemotherapy, and her leukemia went into remission. The insurers paid for this medical treatment. Mrs. Cannon's treating physician, Dr. Ruben Saez, recommended she undergo an autologous bone marrow transplant (ABMT), and on August 10, 1992, sought preauthorization from the insurers.
 
 
 3
 On August 11, 1992, the insurers denied preauthorization for the ABMT, contending the treatment was experimental during a first remission of leukemia. Dr. Saez requested the insurers reconsider his request and submitted medical literature in an attempt to demonstrate his proposed treatment was not experimental. Dr. Saez also informed the insurers his request needed urgent action because it was critical the ABMT be completed prior to any cancer recurrence.
 
 
 4
 On August 21, 1992, the insurers again denied preauthorization. The Cannons persisted in their request for reconsideration, and on September 21, 1992, the insurers reversed their decision and agreed to authorize ABMT. Unfortunately, Mrs. Cannon was not notified until October 10, 1992, in a letter dated September 28, 1992. By that time, her leukemia had returned and she could no longer beneficially receive ABMT, and none was ever administered. She was admitted into the hospital on October 12, 1992, and died on November 21, 1992.
 
 
 5
 Mrs. Cannon was insured through her employer, Hendershot Tool Company. She chose health insurance coverage through Blue Lincs HMO, one of three options of Hendershot's health insurance plan. When Mrs. Cannon was first diagnosed with leukemia in September 1991, the Blue Lincs HMO plan provided:The following services or procedures are not covered by BlueLincs HMO: .... (13) Organ transplants other than skin, cornea, bone, bone marrow and kidney.
 
 
 6
 However, four months after Mrs. Cannon's diagnosis, effective January 1, 1992, Blue Lincs HMO issued an "Amendatory Rider" which specified:
 
 
 7
 Preauthorization will be denied, and benefits will not be provided, for autologous bone marrow transplants.... Such as: acute leukemia in first remission; ....
 
 
 8
 The insurers claimed the Rider was only a clarification in their policy, not a change in coverage. These facts are not in dispute.
 
 
 9
 Initially, on December 30, 1992, Mr. Cannon filed suit in Oklahoma state court to recover damages for the death of his wife. He alleged her insurers either negligently or in bad faith refused to authorize the ABMT for seven weeks, at a time when it offered Mrs. Cannon her only chance of a cure for her leukemia. The insurers filed a Notice of Removal to federal court asserting Mrs. Cannon's health insurance plan was an employee welfare benefit plan within the meaning of ERISA providing exclusive federal jurisdiction.
 
 
 10
 Although Mr. Cannon moved to remand, that motion was denied, and the district court granted the insurers' subsequent motion for summary judgment. The district court concluded Mrs. Cannon's group health insurance coverage was an ERISA plan; and, as such, it preempted all of Mr. Cannon's state common law and statutory claims. Preemption, the court held, was required because the state claims related to the ERISA plan and did not fall within ERISA's savings clause. These conclusions notwithstanding, the district court gave Mr. Cannon the opportunity to file an amended complaint.
 
 
 11
 Thereafter, the district court denied Mr. Cannon's motion to amend his complaint because his new claims could not withstand a motion to dismiss, making amendment futile. Mr. Cannon's amended complaint stated three claims under ERISA: (1) for benefits under 29 U.S.C. § 1132(a)(1)(B); (2) for equitable relief under 29 U.S.C. § 1132(a)(3); and (3) for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(2). Mr. Cannon's complaint also brought a claim pursuant to the Lanham Trade-Mark Act, 15 U.S.C. §§ 1051 to 1127.
 
 
 12
 In its holding, the court disposed of Mr. Cannon's claims for benefits and equitable relief under ERISA because Mrs. Cannon never incurred medical expenses nor received ABMT. The court stated:
 
 
 13
 [It] carefully considered plaintiff's argument but stands unpersuaded that he can sue under subsection 1132(a)(1) or (3) to recover anything other than payment for medical expenses actually incurred, when that is the benefit provided by the plan. Plaintiff cites no legal authority for the proposition that a person may sue to recover the value of a service that would have been a benefit of the plan if the plan's terms had been satisfied.
 
 
 14
 The court also concluded Mr. Cannon's breach of fiduciary duty claim was unavailing because beneficiaries cannot recover compensatory damages for any such breach, stating: "A fiduciary is liable under ERISA, if at all, to the plan and not to the beneficiary." Finally, the court held Mr. Cannon failed to state a claim under the Lanham Trade-Mark Act. Mr. Cannon has not appealed the district court's decision on this issue; therefore, we deem it abandoned and do not address it.
 
 II
 
 15
 * Mr. Cannon raises three issues on appeal. First, he argues ERISA does not preempt state causes of action where ERISA does not provide a remedy. Mr. Cannon contends ERISA preemption in this context is inconsistent with the policies behind ERISA, the McCarran-Ferguson Act, and the Tenth Amendment. Second, Mr. Cannon argues application of ERISA to preempt state laws where ERISA provides no remedy violates his fundamental right to access justice. Third, Mr. Cannon maintains the federal common law includes the concept of equitable estoppel allowing him to assert his claim.
 
 
 16
 This court reviews the district court's interpretation of ERISA de novo. St. Francis Regional Medical Center v. Blue Cross & Blue Shield of Kan., Inc., 49 F.3d 1460, 1462 (10th Cir.1995); National Elevator Indus., Inc. v. Calhoon, 957 F.2d 1555, 1557 (10th Cir.), cert. denied, 506 U.S. 953, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992). Determining whether a particular state law action is preempted by ERISA depends on the interrelationship of three ERISA statutory provisions--the preemption clause, the savings clause, and the deemer clause. The preemption clause, 29 U.S.C. § 1144(a), provides:
 
 
 17
 Except as provided in subsection (b) of this section [the savings clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....
 
 
 18
 The savings clause, 29 U.S.C. § 1144(b)(2)(A), reads:
 
 
 19
 Except as provided in subparagraph (B) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
 
 
 20
 The deemer clause, 29 U.S.C. § 1144(b)(2)(B), states:
 
 
 21
 Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.
 
 
 22
 The interpretation and analysis of these three provisions has been a recurrent theme in both the Supreme Court and this court.
 
 
 23
 The seminal Supreme Court ERISA preemption case is Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). In Pilot Life, the Court addressed the appropriate inquiry for determining whether a particular state law claim was preempted under ERISA. A court must analyze whether the state statutory or common law actions asserted in the plaintiff's complaint " 'relate to' an employee benefit plan and therefore fall under ERISA's express pre-emption clause." Id. at 47, 107 S.Ct. at 1552. The Court noted the preemption clause had an "expansive sweep," and must be given its "broad common-sense meaning." Id.
 
 More recently, the Court has elaborated:
 
 24
 The pre-emption clause is conspicuous for its breadth. Its deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern. The key to § 514(a) is found in the words relate to. Congress used those words in their broad sense, rejecting more limited pre-emption language that would have made the clause applicable only to state laws relating to specific subjects covered by ERISA....
 
 
 25
 A law relates to an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan. Under this broad common-sense meaning, a state law may relate to a benefit plan, and thereby be pre-empted, even if the law is not specifically designed to affect such plans, or the effect is only indirect. Pre-emption is also not precluded simply because a state law is consistent with ERISA's substantive requirements.
 
 
 26
 Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138-39, 111 S.Ct. 478, 482-83, 112 L.Ed.2d 474 (1990) (citations and quotation marks omitted). A common law cause of action which "relates to" ERISA is preempted unless it falls within one of the exceptions to § 514(a).
 
 
 27
 Mr. Cannon's initial claims were for breach of contract or a breach of fiduciary duty cause of action related to the improper processing of Mrs. Cannon's benefit claim for ABMT. Both the Supreme Court and this court have consistently held these types of claims are preempted by ERISA. See, e.g., Pilot Life, 481 U.S. at 57, 107 S.Ct. at 1558 (common law tort and contract actions asserting improper processing of a claim for benefits preempted by ERISA); Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-3, 107 S.Ct. 1542, 1545-46, 95 L.Ed.2d 55 (1987) (common law tort and contract claims are preempted); Pitman v. Blue Cross & Blue Shield of Okla., 24 F.3d 118, 121-22 (10th Cir.1994) (tortious breach of contract claim preempted); Kelso v. General American Life Ins. Co., 967 F.2d 388, 389-91 (10th Cir.1992) (common law breach of contract action preempted). But see Mackey v. Lanier Collection Agency & Serv., 486 U.S. 825, 841, 108 S.Ct. 2182, 2191, 100 L.Ed.2d 836 (1988) (general Georgia garnishment statute not preempted by ERISA; but specific provision referring to ERISA is preempted); Guidry v. Sheet Metal Workers Nat. Pension Fund, 39 F.3d 1078, 1083-86 (10th Cir.1994) (en banc) (general Colorado garnishment statute not preempted by ERISA), cert. denied, --- U.S. ----, 115 S.Ct. 1691, 131 L.Ed.2d 556 (1995).
 
 
 28
 Mr. Cannon does not really dispute the fact his claims would be preempted based on these precedents. Instead, he argues a question of first impression exists whether ERISA may preempt state common law claims if no alternative remedy is possible under ERISA. The district court concluded Mr. Cannon had no available remedy under ERISA, and we agree. However, even assuming Mr. Cannon did not have any remedy pursuant to ERISA, we do not believe this fact has any bearing on our preemption analysis.
 
 
 29
 Mr. Cannon is correct the Supreme Court has not addressed this precise issue. He has skillfully crafted an argument, based on a variety of different cases, that by implication preemption only is appropriate when ERISA provides a remedy. However, none of the cases he cites stand for the broad proposition an exception to ERISA's express preemption clause exists when ERISA provides no remedy.
 
 
 30
 Mr. Cannon is effectively asking us to rewrite ERISA to craft such an exception. Although there are sound reasons why such an exception is appropriate, the Congress, and not this court, is the appropriate forum for such policy arguments.
 
 
 31
 While the Supreme Court has not addressed this issue, we have. In dicta, we have noted the unavailability of a remedy under ERISA is not germane to preemption analysis.
 
 
 32
 Finally, plaintiffs suggest that a definition of "participant" which excludes them will leave them without a remedy, inasmuch as their state law claims were held preempted by ERISA. Preemption is not at issue in this case, and we do not address it. However, we note the fact that a state law claim may be preempted does not necessarily mandate that there be an ERISA remedy. See Corcoran v. United HealthCare, Inc., 965 F.2d 1321, 1333 (5th Cir.) ("While we are not unmindful of the fact that our interpretation of the preemption clause leaves a gap in remedies within a statute intended to protect participants in employee benefit plans, the lack of an ERISA remedy does not affect a pre-emption analysis."), cert. denied, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992); Cromwell v. Equicor HCA Corp., 944 F.2d 1272, 1276 (6th Cir.1991) ("Nor is it relevant to an analysis of the scope of federal preemption that appellants may be left without a remedy."), cert. denied, 505 U.S. 1233, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992); Hospice of Metro Denver, Inc. v. Group Health Ins., 944 F.2d 752, 755 (10th Cir.1991) ("We are aware that preemption normally is not dependent on the availability of ERISA remedies.").
 
 
 33
 Raymond v. Mobil Oil Corp., 983 F.2d 1528, 1537-38 (10th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 81, 126 L.Ed.2d 49 (1993) (footnote omitted).
 
 
 34
 Further, the Supreme Court has clarified Congress intended the civil enforcement mechanisms of ERISA to be exclusive, and this legislative policy choice must be respected. In Pilot Life, the Court explained:
 
 
 35
 In sum, the detailed provisions of § 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.
 
 
 36
 Pilot Life, 481 U.S. at 54, 107 S.Ct. at 1556. We see no reason why this calculation should differ because of the unavailability of ERISA remedies. Mr. Cannon has failed to explain why one class of potential plaintiffs--those without available ERISA remedies--should be entitled to state common law and statutory remedies which would remain unavailable to another class of plaintiffs--those with alternative ERISA remedies. The proper focus for preemption analysis should be on the nature of the claim for relief, not on whether a particular plaintiff has a potential remedy under ERISA.
 
 B
 
 37
 Next, Mr. Cannon crafts an argument out of a creative reading of the deemer and savings clauses. He suggests his claims fall within the savings clause because they regulate insurance. There are numerous problems with this analysis, however.
 
 
 38
 We have found no case which stands for the proposition an insurance company which contracts through an employer to supply insurance to an employee benefit plan should be deemed an insurance company. The savings clause indicates Congress sought to allow states to regulate the business of insurance. In turn, the deemer clause reveals Congress' fear the states would overzealously deem employee benefit plans as insurance for the purpose of regulating them. Mr. Cannon's argument is in direct contradiction to this provision because there is no doubt Mrs. Cannon's plan was an employee benefit plan within the meaning of ERISA.
 
 
 39
 Mr. Cannon's broad policy argument related to the McCarran-Ferguson Act is equally inapposite. In Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 742-44, 105 S.Ct. 2380, 2390-91, 85 L.Ed.2d 728 (1985), the Court adopted the definition of "business of insurance" from this Act to help determine whether a state law falls within the savings clause. Unfortunately for Mr. Cannon, his claims arise from generally applicable common law principles which do not specifically regulate insurance within the meaning of the savings clause. FMC Corp. v. Holliday, 498 U.S. 52, 57-8, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990). Therefore, even if Mrs. Cannon's health plan was considered "insurance," the savings clause would not save Mr. Cannon's claims from the application of the preemption clause.
 
 C
 
 40
 Finally, Mr. Cannon argues the Tenth Amendment supports his theory no remedy equals no preemption. However, he has failed to indicate how the Tenth Amendment precludes Congress from exercising its Commerce Clause authority to enact ERISA. ERISA substantially affects commerce to a greater degree than what has recently concerned the Supreme Court in this area, regardless of the Tenth Amendment. See United States v. Lopez, --- U.S. ----, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (holding Gun Free School Zones Act of 1990, 18 U.S.C. § 922(q)(1)(A), exceeds Congress' Commerce Clause authority). Mr. Cannon's broad policy arguments concerning the reserved powers of the states are unavailing to his cause. We conclude the district court ruled correctly on this issue.
 
 III
 
 41
 Mr. Cannon argues, if ERISA is applied to preempt Oklahoma law, he has suffered an unconstitutional denial of his right to access justice. Mr. Cannon locates this fundamental right in several sources. First, in the Fifth Amendment's Due Process Clause and the Ninth Amendment. He argues one of the Ninth Amendment's rights reserved to the people is the right to access courts for redress. Mr. Cannon cites the Magna Carta in support of this proposition. "To none will we sell, to none will we deny, to none will we delay right to justice." Magna Carta, Art. 40. Second, he finds such a right in two cases. Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); Doe v. Puget Sound Blood Center, 117 Wash.2d 772, 819 P.2d 370 (1991) ("That justice which is to be administered openly is not an abstract theory of constitutional law, but rather is the bedrock foundation upon which rest all the people's rights and obligations."). Third, he argues such a right is implicit in numerous Supreme Court cases which determined federal regulatory law did not preempt state torts law. Mr. Cannon argues in these cases the Court was concerned with whether preemption would deprive a party of a remedy.
 
 
 42
 Although impressed with the inventiveness of this argument, we believe it is without substance. Simply put, a fundamental right to access justice has yet to be defined. The Supreme Court has carefully limited those rights considered part of the substantive component of liberty within the meaning of the Due Process Clauses of the Fifth and Fourteenth Amendments. See generally Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 845-53, 112 S.Ct. 2791, 2804-08, 120 L.Ed.2d 674 (1992) (discussing a woman's right to terminate her pregnancy as a fundamental right); Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 278-85, 110 S.Ct. 2841, 2851-55, 111 L.Ed.2d 224 (1990) (discussing the right to die as a fundamental right); Bowers v. Hardwick, 478 U.S. 186, 190-96, 106 S.Ct. 2841, 2843-46, 92 L.Ed.2d 140 (1986) (discussing the right of homosexuals to engage in consensual sodomy as not a fundamental right).
 
 
 43
 Neither case Mr. Cannon cites supports this fundamental right to access justice. First, in Bounds, the Court held "the fundamental right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498. The fundamental right Mr. Cannon seeks is much broader than the Court's holding in Bounds. Second, in Doe, the Washington Supreme Court addressed whether the recipient of a blood transfusion contaminated with AIDS could compel the discovery of the name of the blood donor from the Blood Center. The court affirmed the trial court's conclusion the donor's name could be discovered. Doe, 819 P.2d at 373. We fail to see the relevance of Doe to Mr. Cannon's argument. Finally, the other cases involving federal preemption cited by Mr. Cannon are also inapposite.
 
 IV
 
 44
 Last, Mr. Cannon argues the concept of equitable estoppel should apply here. He asserts federal courts have a duty to develop federal common law to supplement ERISA, and this court should look to state law to develop this federal common law. Mr. Cannon asserts the court in National Companies Health Benefit Plan v. St. Joseph's Hosp. of Atlanta, 929 F.2d 1558 (11th Cir.1991), adopted the principle of equitable estoppel in ERISA cases. He urges equitable estoppel principles should apply here to prevent the insurers from benefitting from their unreasonable conduct.
 
 
 45
 Although Mr. Cannon relies upon National Companies for the general proposition a federal common law of equitable estoppel should be applied in his case, the Eleventh Circuit concluded equitable estoppel could apply only under certain circumstances, explaining:
 
 
 46
 In Nachwalter v. Christie, 805 F.2d 956, 960 (11th Cir.1986), this court held that the federal common-law claim of equitable estoppel is not available to plaintiffs in cases involving oral amendments to or modifications of clear terms of employee benefit plans governed by ERISA....
 
 
 47
 In Kane [v. Aetna Life Ins., 893 F.2d 1283, 1283, cert. denied, 498 U.S. 890, 111 S.Ct. 232, 112 L.Ed.2d 192 (1990) ], this court further clarified the scope of the holding in Nachwalter, "differentiat[ing] between oral amendments or modifications to a plan and oral interpretations of a plan." The court held that the federal common-law claim of equitable estoppel may be applied when an employee relies, to his detriment, on an interpretation of an ambiguous provision in a plan by a representative of that plan.... The rationale of Kane is equally applicable to informal written interpretations of an ERISA plan.
 
 
 48
 Id. at 1571-72 (citation omitted). The court applied its equitable estoppel rule to a written interpretation of an ERISA continuing coverage provision. Id. at 1572. In National Companies, the Eleventh Circuit identified five elements of a common-law claim of equitable estoppel: (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation. Id. (citing Heckler v. Community Health Servs. of Crawford Cty., Inc., 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42 (1984) and Apponi v. Sunshine Biscuits, Inc., 809 F.2d 1210, 1217 (6th Cir.), cert. denied, 484 U.S. 820, 108 S.Ct. 77, 98 L.Ed.2d 40 (1987)).
 
 
 49
 The major distinction here which negates equitable estoppel is the absence of misrepresentation of any term of the plan triggering Mrs. Cannon's reasonable detrimental reliance. The controversy surrounding whether the plan would authorize ABMT had nothing to do with any misrepresentation; it simply was a disagreement over the proper interpretation of the terms of the plan. Although it is arguable whether the insurers improperly interpreted the plan, misinterpretation does not amount to the misrepresentation necessary to support an equitable estoppel claim.
 
 
 50
 This court has neither adopted nor rejected an equitable estoppel rule in the ERISA context. In Averhart v. U.S. West Management Pension Plan, 46 F.3d 1480 (10th Cir.1994), we effectively avoided a decision of this issue by not explicitly saying an equitable estoppel theory was viable, but concluding the plaintiffs failed to state such a claim. We explained:
 
 
 51
 We hold that, in any event, the plaintiffs have not shown any viable basis for the estoppel theory they advance--that there were representations made interpreting ambiguous Plan terms. Courts that have recognized estoppel claims in these circumstances have done so only where "the terms of the plan are ambiguous" and "the employer['s] communications constituted an interpretation of that ambiguity."
 
 
 52
 Id. at 1486 (citations omitted). Because Mr. Cannon has failed to state an equitable estoppel claim here, we do not believe this is a case in which the availability of such a claim should be decided.
 
 
 53
 AFFIRMED.
 
 
 
 *
 Honorable Sven Erik Holmes, United States District Court for the Northern District of Oklahoma, sitting by designation