**Doris HUSS, Mother, Administratrix and Personal Representative of the Estate of Jacob Carl Stefanide, Plaintiff,**

**v.**

**GREEN SPRING HEALTH SERVICES, INC., t/a Green Spring of Eastern Pennsylvania, Amerihealth Insurance Co., n/k/a/ QCC Insurance Company, Amerihealth HMO, Inc., Keystone Health Plan East, Inc., and Independence Blue Cross Corporation, Defendants.**

No. CIV.A.98–59 MMS.

United States District Court, D. Delaware.

Aug. 19, 1998.

Francis G.X. Pileggi of Manta and Welge, Wilmington, Delaware, for plaintiff.

Joseph Grey of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Delaware; Of Counsel: E. Dale Adkins, III, and M. Bradley Hallwig of Anderson, Coe & King, L.L.P., Baltimore, Maryland, for defendant Green Spring Health Services, Inc., t/a Green Spring of Eastern Pennsylvania.

John A. Parkins, Jr., Richards, Layton & Finger, Wilmington, Delaware; Of Counsel: Jay H. Calvert, Jr., and Thomas P. Hogan, Jr. of Morgan, Lewis & Bockius LLP, Philadelphia, Pennsylvania, for defendants Amerihealth HMO, Inc., Keystone Health Plan East, Inc., Amerihealth Insurance Co., n/k/a/ QCC Insurance Company, and Independence Blue Cross Corporation.

### OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

### INTRODUCTION

On February 2, 1998, plaintiff Doris Huss, mother of Jacob Stefanide, brought this action against Green Spring Health Services, Inc. ("Green Spring"), AmeriHealth Insurance Co. ("AmeriHealth"), QCC Insurance Company ("QCC"), AmeriHealth HMO, Inc. ("AmeriHealth"),[1] Keystone Health Plan East, Inc. ("Keystone"), and Independence Blue Cross Corporation ("Blue Cross"). Plaintiff, who is the administratrix and personal representative of Jacob's estate, alleges the defendants' breach of contract, breach of fiduciary duty and medical malpractice led to Jacob's suicide. Plaintiff asserts jurisdiction pursuant to 28. U.S.C. § 1332, diversity jurisdiction, and seeks compensatory and punitive damages only.[2] Defendants' filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), arguing that plaintiff's state law claims are preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*[3] For the following reasons, defendants' motions will be granted.

### STANDARD OF REVIEW

The purpose of a 12(b)(6) analysis is to determine "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In considering a motion to dismiss under Rule 12(b)(6), the court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant." *Jordan v. Fox,* 20 F.3d 1250, 1261 (3d Cir.1994) (citing *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989)); *D.P. Enters., Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984). Further, in determining whether a claim should be dismissed under Rule 12(b)(6),

a court looks only to the facts alleged in the complaint and its attachments without

---

1. Plaintiff does not distinguish between AmeriHealth Ins. Co. and AmeriHealth HMO in her complaint. Therefore, the Court will refer to "AmeriHealth," which may constitute one or both of these defendants. For purposes of this motion, the ambiguity is inconsequential.

2. Plaintiff's claim for punitive damages was stated as a fourth cause of action.

3. Defendants QCC and Blue Cross also argue the complaint should be dismissed against them in particular because it fails to allege any actions on their part.

reference to other parts of the record. Moreover, a case should not be dismissed for failure to state a claim unless it clearly appears that no relief can be granted under any set of facts that could be proved consistently with the plaintiff's allegations. *Jordan,* 20 F.3d at 1261 (citing *Hishon v. King & Spalding,* 467 U.S. 69 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *D.P. Enters.,* 725 F.2d at 944)). The moving party has the burden of persuasion. *Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3rd Cir.1991).

## STATEMENT OF FACTS

Jacob Stefanide was suffering from a depressive psychiatric disorder. On December 16, 1997, Jacob's mother called Green Spring[4] in order to obtain a referral to a psychiatrist, thereby fulfilling one of the preconditions for coverage under the Keystone benefit plan. Although the family's coverage became effective on December 3, 1997 and all premiums had been paid, Green Spring and/or Keystone erroneously informed Jacob's mother on December 16 that no members of the family were enrolled. On December 19, 1997, Jacob's mother called Green Spring a second time to try to arrange for emergency medical care for her son. She was again inaccurately told that no members of her family were enrolled in the Keystone Health Plan. On December 23, 1997, a representative of AmeriHealth, which administered the benefit plan, met with Jacob's mother and advised her that the Member Services department would re-enroll all members of the family as policyholders on that date. At approximately 4:00 p .m. on December 23, 1997, Jacob committed suicide. On the same day, after Jacob's death, Green Spring called Jacob's mother to give her the name of a psychologist for Jacob.

## DISCUSSION

### I. Jurisdiction

■ Green Spring asserts it cannot remain a defendant because no diversity exists

between plaintiff and Green Spring. Plaintiff is a Delaware resident and Green Spring is a Delaware corporation. For diversity jurisdiction under 28 U.S.C. § 1332, all defendants must be diverse from all plaintiffs. *See Strawbridge v. Curtiss,* 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806); *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 5.3.3, at 280–281 (2d ed.1994). If "complete diversity" does not exist, in other words, "where co-citizens appear[ ] on both sides of a dispute, jurisdiction [is] lost." *State Farm Fire & Casualty Co. v. Tashire,* 386 U.S. 523, 530–531, 87 S.Ct. 1199, 18 L.Ed.2d 270 (1967). Consequently, the Court can not exercise diversity jurisdiction over *any* of the defendants.

Despite the failure of plaintiff's asserted basis for jurisdiction, the Third Circuit Court of Appeals has taught that the Court should "consider[ ] whether the suit raises a federal question to support jurisdiction on grounds other than diversity." *Virgin Islands Housing Auth. v. Coastal Gen. Const.,* 27 F.3d 911, 914–915 n. 2 (3d Cir.1994); *see also* 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1210, at 121 (stating that "[a] reference to the wrong statute or an erroneous basis of jurisdiction will be corrected by the court if it can determine the appropriate statute or jurisdictional source from the complaint"), *quoted with approval in Boarhead Corp. v. Erickson,* 923 F.2d 1011, 1018 (3d Cir.1991). Because the complaint clearly sounds in ERISA, the Court will assert federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### II. Pre-emption

■ The primary question before the Court is whether plaintiff's breach of contract, breach of fiduciary duty, and medical malpractice claims are preempted by ERISA. ERISA was intended to protect the interests of employees and their beneficiaries by supplanting piecemeal state regulation of employee benefit plans with comprehensive, uniform federal regulation of such plans.

---

4. Green Spring had been retained by Keystone and Blue Cross to administer insurance benefits.

*See* Docket Item ("D.I.") 1 at 2, ¶ 3.

*See* 29 U.S.C. § 1001(b); *FMC Corp. v. Holliday,* 498 U.S. 52, 56–60, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). In an attempt to achieve this goal, among others, ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[ [5]] not exempt under section 1003(b) of this title." [6] 29 U.S.C. § 1144(a).

■ The preemption analysis is guided by congressional intent, *see Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and ERISA's preemption clause was "deliberately expansive … to establish pension plan regulation as exclusively a federal concern." *See id.* at 46, 107 S.Ct. 1549 (internal quotation omitted).[7] Plaintiff concedes that whether ERISA preempts such state claims depends on whether the claims "relate to" an ERISA plan. 29 U.S.C. § 1144(a). A state law "relates to" an employee benefit plan if it has "a connection with or reference to such a plan." *Shaw v. Delta Air Lines,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Therefore, although preemption is not limitless,[8] a state law may "relate to" an employee benefit plan even if the law was not created to affect the plan, *see id.* at 47–48, 107 S.Ct. 1549, or the effect is only indirect. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138–139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

The Supreme Court has taught Congress clearly intended that "all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by § 502(a)." *Pilot Life,* 481 U.S. at 56, 107 S.Ct. 1549. As a result, the Supreme Court has held that ERISA's preemption clause applied to a plaintiff's claims of tortious breach of contract, breach of fiduciary duties and fraud in the inducement arising out of an insurance company's failure to pay benefits owed. *See id.* at 48, 57, 107 S.Ct. 1549. *Cf. Ingersoll–Rand,* 498 U.S. at 140, 111 S.Ct. 478 (holding that state tort claims arising out of a wrongful discharge allegedly committed in an effort to avoid paying out pension benefits were preempted); *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (stating that state law claims for breach of contract, wrongful termination, and retaliation were preempted).

Although the Third Circuit Court of Appeals has not specifically addressed the question presented in the case at bar, the appellate court has discussed the relationship between state medical malpractice claims and ERISA's enforcement provision. In *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350 (3d Cir.), *cert. denied,* 516 U.S. 1009, 116 S.Ct. 564, 133 L.Ed.2d 489 (1995), plaintiffs from two cases joined for decision were suing a health maintenance organization for injuries arising from the medical malpractice of several affiliated hospitals and health care professionals. *See id.* at 351. In one case a health facility had refused to perform a

---

5. Plaintiff does not dispute that the Keystone health insurance plan is an employee benefit plan. Moreover, the complaint states that the plan is an "employee welfare benefit plan." *See* D.I. 1 at 5 ¶ 13.

6. Section 1144(b) of ERISA provides exemptions which are inapplicable to the case at bar. *See* 29 U.S.C. § 1144(b).

7. Congress took great pains to modify the original bill and broaden the preemption clause with an eye towards reserving sole power over such benefit plans for the federal government. *See Pilot Life,* 481 U.S. at 46, 107 S.Ct. 1549.

8. The Supreme Court has explained that some state actions "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct.

2890. In addition, in *N.Y. Conference of Blue Cross & Blue Shield v. Travelers Ins.,* 514 U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995), the Supreme Court explained that the phrase "relate to" and the brief definitions accorded that phrase should not be read too broadly but rather should be applied in accordance with the purposes of ERISA preemption. *See id.* at 655–663, 115 S.Ct. 1671. Although *Travelers* indicated that deciding the preemption question may be more difficult and unclear than lower courts previously thought, *Travelers* also affirmed the views expressed by the Supreme Court in prior decisions on ERISA preemption. *See id.* at 668, 115 S.Ct. 1671. In light of this affirmation, the manner in which the complaint was pleaded in the case at bar, and the case law discussed blow, *Travelers,* while giving the Court pause, does not alter the Court's decision.

blood test, leading to a delayed detection of a high blood sugar level and, allegedly, to the patient's unnecessary death. *See id.* at 352. The plaintiffs in the other case were suing based on a doctor's alleged failure to prevent their baby from being stillborn. *See id.* at 353.

The Third Circuit Court of Appeals first noted the plaintiffs were complaining not about benefits being withheld but rather about the poor quality of medical treatment they received. *See id.* at 356. The court then explained there is a critical distinction between a company performing its administrative functions, *e.g.,* conducting a utilization or pre-certification review, and a company providing, arranging for, and supervising the doctors who provided the actual medical treatment for the plan participants. *See id.* at 360–361. Only the former implicates ERISA.[9] *See id.* Cf. *Berger v. Edgewater Steel Co.,* 911 F.2d 911, 923 (3d Cir.1990) (holding misrepresentation claim preempted), *cert. denied,* 499 U.S. 920, 111 S.Ct. 1310, 113 L.Ed.2d 244 (1991); *Pane v. RCA Corp.,* 868 F.2d 631, 634–635 (3d Cir.1989) (holding state claims for breach of contract, breach of covenants of good faith and fair dealing, and intentional infliction of emotional distress arising out of "the administration of an ERISA employee benefit plan" were preempted)[10] (citing *Howard v. Parisian, Inc.,* 807 F.2d 1560 (11th Cir.1987); *Powell v.*

*Chesapeake & Potomac Tel. Co.,* 780 F.2d 419 (4th Cir.1985), *cert. denied,* 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 980 (1986)).

Consistent with the holdings of *Pilot Life* and *Dukes,* many appellate courts have held that tort and contract claims similar to those in the case at bar are preempted by ERISA. In *Kuhl v. Lincoln National Health Plan of Kansas City, Inc.,* 999 F.2d 298 (8th Cir. 1993), *cert. denied,* 510 U.S. 1045, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994), the health maintenance organization had wrongfully delayed approval of heart surgery such that the surgery was no longer a viable option. *See id.* at 300. Without the surgery, the patient died. *See id.* The patient's wife and daughter filed a complaint against the organization alleging medical malpractice, emotional distress, tortious interference with the patient's right to contract for medical care, and breach of contract. *See id.* The Eighth Circuit Court of Appeals held that artful characterization of the action as malpractice did not change the fact that plaintiffs' claims were based on the organization's delay in recertifying payment for surgery. *See id.* at 303–304. Such a failure constituted an improper processing of a claim for benefits and was, therefore, preempted. *See id.; see also Cannon v. Group Health Service of Oklahoma, Inc.,* 77 F.3d 1270, 1273–1274 (10th Cir.) (holding plaintiff's breach of contract and

**9.** An example of the distinction stressed in *Dukes* was seen in *Elsesser v. Hospital of Philadelphia College of Osteopathic Medicine, Parkview,* 802 F.Supp. 1286 (E.D.Pa.1992). In *Elsesser,* the plaintiffs sued for the negligence, breach of contract, and misrepresentation allegedly committed by a health maintenance organization due to the treatment rendered by the primary care physician who was provided under the health plan. *See id.* at 1288. The court held that to the degree the plaintiffs were trying to hold the organization vicariously liable for the medical malpractice of the doctor, the cause of action for negligence was not preempted. *See id.* at 1290. However, to the degree the negligence action was based on the organization's alleged "role" in the malpractice due to its refusal to pay for certain treatments, the negligence claim was preempted. *See id.* at 1290–1291. Similarly, the claims that the organization misrepresented the extent or nature of the care that would be provided under the benefit plan or breached the contract by providing unqualified primary care physicians were preempted. *See id.* at 1292.

**10.** The Court is aware of the apparent inconsistency between this holding as it pertains to the intentional infliction of emotional distress and the holding or commentary in *Kelly v. International Business Machines Corp.,* 573 F.Supp. 366 (E.D.Pa.1983), *aff'd mem.* 746 F.2d 1467 (3d Cir.1984), and *Shiffler v. Equitable Life Assurance Society of the United States,* 838 F.2d 78, 82–83 and n. 6 (3d Cir.1988). The Court agrees with the district court in *Pane v. RCA Corp.,* 667 F.Supp. 168 (D.N.J.1987), *aff'd,* 868 F.2d 631 (3d Cir.1989), however, that the Third Circuit Court of Appeals' unpublished memorandum opinion in *Kelly* is not binding. *See id.* at 173 (citing *Aetna Life & Casualty Co. v. Maravich,* 824 F.2d 266, 269 (3d Cir.1987)). In addition, *Kelly* predated some important Supreme Court and circuit court decisions, which are discussed in *Pane* and/or by this Court. *Shiffler's* apparent reinforcement of the *Kelly* holding before *Pane* but after several of the relevant Supreme Court opinions gives the Court greater pause. Nevertheless, *Pane* clearly and explicitly holds what *Shiffler* seemingly contradicts in a footnote.

breach of fiduciary duty claims arising out of wife's death allegedly caused by health organization's delayed approval of bone marrow transplant were preempted), *cert. denied,* —— U.S. ——, 117 S.Ct. 66, 136 L.Ed.2d 27 (1996); *Spain v. Aetna Life Insurance Co.,* 11 F.3d 129, 131–132 (9th Cir.1993) (holding plaintiff's wrongful death action resulting from a health organization's delayed approval of the third part of a bone marrow transplant was a claim for the negligent administration of benefits and was preempted by ERISA), *cert. denied,* 511 U.S. 1052, 114 S.Ct. 1612, 128 L.Ed.2d 340 (1994).

Similarly, the Sixth Circuit Court of Appeals in *Tolton v. American Biodyne, Inc.,* 48 F.3d 937 (6th Cir.1995), confronted whether claims of wrongful death, medical malpractice, negligent and intentional refusal to authorize inpatient treatment, insurance bad faith, breach of contract, negligent retention of services, and loss of consortium were preempted by ERISA. *See id.* at 939. The claims arose out of the administrator and health provider's refusal to authorize certain psychiatric benefits to Henry Tolton prior to his suicide. *See id.* at 939–940. Because such denials were based on assessments of what benefits were available to the deceased under the plan, the court held that claims related to those denials were preempted by ERISA. *See id.* at 942.

ERISA has also been interpreted as preempting claims based on a health organization's benefits determination even when the decision was considered to constitute medical advice as well. *See Corcoran v. United HealthCare, Inc.,* 965 F.2d 1321, 1331 (5th Cir.), *cert. denied,* 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992). In *Corcoran,* the Fifth Circuit Court of Appeals held that because the health organization's medical advice was in the context of making a determination about the availability of benefits under the plan, the plaintiffs' wrongful death action based on the loss of their unborn fetus was preempted by ERISA. *See id.* at 1331.

Turning to the case at bar, the Court is confronted with plaintiff's allegations that defendants wrongfully advised plaintiff she was not a policyholder. This error goes directly to the administration of the benefits plan. The threshold question is whether plaintiff's son was in fact covered by the Keystone benefit plan at the times plaintiff called for a referral. If so, the fundamental question becomes why did the administrator(s) give plaintiff inaccurate information about her coverage.

Despite plaintiff's attempts to craft defendants' actions as medical malpractice, the wrong committed in this case relates to the administration of the plan, not to the provision or supervision of medical services. In fact, the overarching problem was that no medical treatment was ever initiated let alone provided. Plaintiff was seeking a referral *pursuant to the plan* in order to utilize benefits *under the plan* and the failed administration *of the plan* precluded her from doing so. The Court recognizes plaintiff is attacking the quality of services provided by the defendants rather than the denial of acknowledged benefits; however, the service complained of is administrative not medical.

Although the cases discussed above involved plans that were invoked rather than plans whose existence were denied, this distinction does not significantly alter the analysis *in this case.* Plaintiff has not claimed damages for torts committed before the plan took effect, *e.g.,* for wrongs that may have prevented the plan from taking effect, but rather for wrongs committed in the administration of the plan after it allegedly became effective. *See Coyne & Delany Co. v. Selman,* 98 F.3d 1457, 1471–1472 (4th Cir.1996) (holding professional malpractice claim focusing on actions that took place before the plan became operative and before defendants were acting in their roles as administrators was not preempted). Plaintiff's breach of contract claim rests on the defendants' alleged failure to "provide accurate benefit information and insurance coverage according to the terms and conditions of the insurance contract." D.I. 1 at 7, ¶ 24. Further, plaintiff's breach of fiduciary duty claim relies on defendants' failure to "maintain organized records on policyholders and to manage insurance benefits on behalf of Plaintiff and her family." *Id.* at 7, ¶ 28. Finally, the medical malpractice claim focuses on defendants' failing "to verify insurance coverage"

and "refusing treatment." *Id.* at 8, ¶ 32. The inescapable conclusion is that defendants were acting in their roles of administrators over the plan when they committed the alleged torts.[11] Necessarily left for another day is whether ERISA would preempt a complaint that was based upon state law and stated claims for actions or omissions occurring prior to the actual administration or processing of an existing plan.

In light of the above discussion, the Court holds plaintiff's state law claims are preempted by ERISA.[12] The Court recognizes that imposing liability under state law on a benefits administrator might have the salutary effect of deterring the kind of carelessness allegedly demonstrated in this case. *See Kuhl,* 999 F.2d at 304. However, as the Supreme Court has taught, the civil enforcement provision of ERISA was

> intended to ensure that plans and plan sponsors would be subject to a uniform body of benefits law; the goal was to minimize the administrative and financial burden of complying with conflicting directives among States or between States and the Federal Government.

*Ingersoll–Rand,* 498 U.S. at 142, 111 S.Ct. 478. This Court's holding, while regrettable,

necessarily furthers this goal. It is stressed, however, that the Court's decision is a narrow one and addresses only the claims presented. The Court's ruling does not address other possible state claims that were not pled but may be supported by the facts alleged.

## III. Viability of Claims for Compensatory and Punitive Damages Under ERISA

 Because ERISA preempts plaintiff's state law claims and, therefore, compels the granting of defendants' motions to dismiss, the Court must decide whether to dismiss these claims with or without prejudice. Just as a dismissal without prejudice is an "implicit invitation to amplify the complaint," *See Borelli v. City of Reading,* 532 F.2d 950, 951 (3d Cir.1976), a dismissal with prejudice is granted when the action can "not be saved by amendment." *See Czeremcha v. International Ass'n of Machinists and Aerospace Workers,* 724 F.2d 1552, 1554 (11th Cir.1984), *cited with approval in N.A.A.C.P. v. Town of Harrison,* 907 F.2d 1408, 1417 (3d Cir. 1990).[13]

 The civil enforcement provision of ERISA is section 1132. Plaintiff's claims would necessarily be filed under section 1132(a)(1)(B),[14] section 1132(a)(2),[15] or section

---

**11.** Although acknowledging that no medical care was ever provided, the plaintiff periodically, but unsuccessfully, attempts to characterize this case as one in which the defendants are vicariously liable for a hospital's or physician's negligence, or as one in which the defendants themselves provided substandard medical care. *See* D.I. 17 at 5–10.

**12.** Green Spring Health Services is described under the "Parties" section of the complaint as "acting on behalf of or [being] affiliated with" Keystone and Blue Cross and as "engag[ing] in the business of administering insurance benefits." D.I. 1 at 2, ¶ 3. Because Green Spring's actions in this suit related to the processing of claims, the Court need not address whether other claims that may arise out of the referral process or out of Green Springs providing for, arranging and supervising doctors delivering health care would be preempted by ERISA.

**13.** In her brief, plaintiff requests leave to amend her complaint; however, she has not filed a motion to amend. Because defendants' motions to dismiss are not responsive pleadings for purposes of Fed.R.Civ.P. 15, they technically do not alter plaintiff's ability to amend as of right. FED. R. CIV. P. 15; 3 MOORE'S FEDERAL PRACTICE ¶ 15.11

(3d ed.1998). Nevertheless, the granting of a motion to dismiss without prejudice requires that subsequent amendments are made only with leave of the Court. *See Newark Branch, National Association for the Advancement of Colored People v. Town of Harrison, New Jersey,* 907 F.2d 1408, 1416, 1417 (3d Cir.1990); 3 MOORE'S FEDERAL PRACTICE ¶ 15.12[1] (3d ed.1998). In contrast, the granting of a motion to dismiss with prejudice precludes review of the motion to amend. *See Town of Harrison,* 907 F.2d at 1417; 3 MOORE'S FEDERAL PRACTICE ¶ 15.12[1] (3d ed.1998). Of course, with diversity lacking, the reality is if plaintiff desires to pursue this matter further, it must be done in state court rather than by amendment of the complaint in federal court.

**14.** Section 1132(a)(1)(B) provides that a civil action may be brought:

> by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

**15.** Section 1132(a)(2) states that a civil action may be brought "by the Secretary, or by a partic-

(a)(3).[16] These sections enable a participant or beneficiary to sue for benefits due under the plan, to enforce rights under the plan, to clarify rights to future benefits or to assert a breach of fiduciary duty. *See* 29 U.S.C. § 1132(a); *Pilot Life,* 481 U.S. at 53, 107 S.Ct. 1549. In analyzing plaintiff's ability to pursue her action for compensatory and punitive damages, the Court will take each of the relevant statutory provisions in turn.

### A. Subsection (a)(1)(B)

Although the Supreme Court has not spoken directly to this subsection, the Third Circuit Court of Appeals has held that extracontractual damages cannot be recovered under section 1132(a)(1)(B) of ERISA. *See Kemmerer v. ICI Americas, Inc.,* 70 F.3d 281, 289 (3d Cir.1995); *see also Haberern v. Kaupp Vascular Surgeons Pension Plan,* 24 F.3d 1491, 1500–1501 (3d Cir.1994) (stating that § 1132(a)(1)(B) provides for a declaration or enforcement of rights or for recovery of benefits, not for a private right of action for compensatory damages), *cert. denied,* 513 U.S. 1149, 115 S.Ct. 1099, 130 L.Ed.2d 1067 (1995). The *Kemmerer* appellate court relied primarily on *Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), and *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), which are discussed further below.

### B. Subsection (a)(2)

In *Russell,* which involved a claim of improper and untimely processing of benefits claims, the Supreme Court held that an employee benefit plan could not be held liable under § 1132(a)(2) to a plan participant or beneficiary for extracontractual compensatory or punitive damages. *See id.* at 140, 142, 148, 105 S.Ct. 3085, 87 L.Ed.2d 96. Instead, this subsection is intended only to authorize relief for the plan itself and not for particular individuals who want to assert a private right of action. *See id.* at 144, 148, 105 S.Ct. 3085;[17] *see also McMahon v.. McDowell,* 794 F.2d 100, 109 (3d Cir.) (recognizing Russell's holding that damages recovered under § 1132(a)(2) must be for the benefit of the plan, not of individual participants), *cert. denied,* 479 U.S. 971, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986); *Pane,* 868 F.2d at 635 (stating that state law claims of emotional distress and related punitive damages arising out of "the administration of an ERISA employee benefit plan" are preempted).

### C. Subsection (a)(3)

The question of whether a plaintiff is entitled to monetary damages under § 1132(a)(3) was squarely addressed by the Supreme Court in *Mertens.* In *Mertens,* an inadequately funded pension benefit program caused the early termination of pension benefits, leading to a lawsuit for breach of fiduciary duties. *See* 508 U.S. at 250, 113 S.Ct. 2063. The Court was asked to resolve whether Section 1132(a)(3)'s provision of "appropriate equitable relief" allowed for the

---

ipant, beneficiary or fiduciary for appropriate relief under section 1109 of this title[.]" 29 U.S.C. § 1132(a)(2).

Section 1109, entitled "Liability for breach of fiduciary duty," states:

Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary. A fiduciary may also be removed for a violation of section 1111 of this title.

29 U.S.C. § 1109.

**16.** Section 1132(a)(3) provides that a civil action may be brought:

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C. § 1132(a)(3). The remaining subsections of § 1132(a) either apply only to the Secretary, *see* § 1132(a)(5)-(6), relate to an administrator's refusal to supply requested information, *see* § 1132(a)(1)(A), or relate to the reporting requirement. *See* § 1132(a)(4).

**17.** The continuing validity of this holding was recognized by the Supreme Court in *Varity Corporation v. Howe,* 516 U.S. 489, 509–510, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996).

granting of compensatory damages for a breach of fiduciary duties. *Id.* at 254, 113 S.Ct. 2063. The Court first noted that it had construed similar language in Title VII of the Civil Rights Act of 1964—"any other equitable relief as the court deems appropriate," 42 U.S.C. § 2000e–5(g)—to preclude "awards for compensatory or punitive damages." 508 U.S. at 255, 113 S.Ct. 2063 (quoting *United States v. Burke,* 504 U.S. 229, 238, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992)). The Court then discussed ERISA's "roots in the common law of trusts" and, although acknowledging that money damages were available in the courts against the trustee, distinguished ERISA's legislative history as well as the plain text of the statute as a whole. 508 U.S. at 255–258, 261–262, 113 S.Ct. 2063. Concluding that section 1132(a)(3) does not permit monetary damages, the Court noted that the alternative interpretations would render the term "equitable" superfluous, would ascribe different meaning to the term than it has in other portions of the statute, or would render meaningless distinctions in the types of relief identified in the statute. *See id.* at 257–258, 113 S.Ct. 2063.[18] *See also Kemmerer,* 70 F.3d at 289 (stating that extracontractual damages for purposes of section 1132(a)(1)(B) and monetary damages for purposes of section 1132(a)(3) are not cognizable claims under ERISA).

In conclusion, the three relevant subsections of 1132(a) allow the Court to grant an individual "accrued benefits due, a declaratory judgment on entitlement to benefits, ... an injunction against a plan administrator's improper refusal to pay benefits[,] ... [and] removal of the fiduciary," *Pilot Life,* 481 U.S. at 53, 107 S.Ct. 1549, but not to grant compensatory and punitive damages. The Court is not unmindful this holding leaves plaintiff with no remedy under ERISA for the needless and tragic loss she has suffered. *Cf. Cannon,* 77 F.3d at 1274 ("[T]he unavailability of a remedy under ERISA is not germane to preemption analysis."); *Tolton,* 48 F.3d at 943 ("That ERISA does not provide the full range of remedies available under state law in no way undermines ERISA preemption.");

*Corcoran,* 965 F.2d at 1333 ("The acknowledged absence of a remedy under ERISA's civil enforcement scheme for medical malpractice committed in connection with a plan benefit determination does not alter our conclusion [that the wrongful death action is preempted].") Nevertheless, the Court must respect Congress' intent to have the civil enforcement mechanism of ERISA be the exclusive remedy for such claims. As the Supreme Court stated in *Pilot Life:*

> The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.

481 U.S. at 54, 107 S.Ct. 1549 (internal quotations omitted). Although plaintiff's claims are both preempted by and unredressable under ERISA, the Court explained previously that plaintiff may have other viable state law claims which survive ERISA. Therefore, plaintiff's complaint will be dismissed without prejudice.

## Conclusion

Plaintiff's state law breach of contract, breach of fiduciary duty, and medical malpractice claims are preempted by ERISA. Moreover, the relevant civil enforcement provisions of ERISA do not permit individual claims for compensatory and punitive damages. There is sound reason to alter ERISA in order to provide relief to plaintiffs who present claims like this one; however, amending ERISA to accommodate those causes of action is for Congress, not the courts. Defendants' motions will be granted

**18.** The holding in *Mertens* was reiterated by the Supreme Court in *Varity. See* 516 U.S. at 509– 510, 116 S.Ct. 1065.

and the state law claims dismissed without prejudice.[19]

**19.** Because the Court has dismissed all of plaintiff's claims, there is no need to decide whether the pleadings are sufficient to maintain QCC and Independence Blue Cross as defendants.