**NON-PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-3453
_____

TINA MCLINTOCK,
Appellant

v.

CITY OF PHILADELPHIA; DAVID JONES, in his individual capacity

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:20-cv-00507)
District Judge:  Hon. Paul S. Diamond

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)

September 22, 2021

Before: SMITH, *Chief Judge*[1], McKEE, and RESTREPO,
*Circuit Judges*.

(Opinion filed  February 9, 2022)

_____

[1] Judge Smith was Chief Judge at the time this appeal was submitted.  Judge Smith completed his term as Chief Judge and assumed senior status on December 4, 2021.

_____

OPINION[2]

_____

RESTREPO, *Circuit Judge*.

Appellant, Tina McLintock, a Caucasian woman, alleged claims of racial discrimination against her employer, the City of Philadelphia, and her supervisor David Jones.

We agree with the District Court that McLintock failed to present any genuine issues of material fact to support her claim. We will therefore affirm the District Court's grant of summary judgment in the appellees' favor.

## I.     FACTUAL AND PROCEDURAL HISTORY

We write for the parties, and in so doing communicate only those facts necessary for the disposition of this matter. McLintock has worked for the City of Philadelphia in various capacities since 1987. Since 2013, she worked in the City of Philadelphia's Department of Behavioral Health and Intellectual Disability Services ("DBHIDS" or "Department"). McLintock started as a fiscal officer but was then promoted to Fiscal Director in February 2017. She holds a bachelor's degree in political science and a master's degree in public administration. She is not an accountant, nor has she studied accounting.

---

[2] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

McLintock reported directly to the Department's Chief Financial Officer ("CFO"), James Hoefler—a Caucasian man—until he retired in January 2020. In June 2019, Joseph Lowry, an African American man, began serving as CFO alongside Hoefler in a transition that continued until Hoefler retired. The CFO reports to both the Department's Commissioner and Deputy Commissioner.

Appellee David Jones, is an African American man who has served as the Department's Commissioner since July of 2017. Dr. Jill Bowen, who is not a named party in this action, is a Caucasian woman and has been the Deputy Commissioner since January 2018.

Hoefler made his plan to retire known several years prior to his actual retirement. In her deposition and in her first EEOC complaint, McLintock stated that Jones told her that she was "next up" in the "natural progression" App. 58. Jones told McLintock that she ought to "shadow" Hoefler and McLintock did so with the expectation that she would assume Hoefler's position upon his retirement. App. 165. However, Jones testified that McLintock's expectations were unfounded because her shadowing of Hoefler was in accordance with past practice when a Department's CFO leaves.

McLintock stated that she did not apply for the CFO position because it was never formally posted although she knew about the available position from word of mouth. Appellant Br. at 20; App. 90. McLintock testified that she would have applied for the position if she had known about it, *id.*, though she was aware of Hoefler's upcoming retirement which would inevitably create an opening for his position. Additionally, Jones

3

and others notified employees of the opening by word of mouth, but McLintock made no effort to determine how she could apply internally.

Following her last formal evaluation before the filling of the CFO position, McLintock exhibited challenges with interpersonal and supervisory skills. These difficulties prompted various staff complaints and led at least one employee to resign from her position. Following these incidents, Hoefler and Jill Bowen, the Deputy Commissioner, counseled McLintock on how to improve her interpersonal skills.

On June 11, 2019, Joseph Lowry, an African American man, was appointed to CFO. Two days later, McLintock filed a discrimination charge with the EEOC and subsequently received a right to sue letter. McLintock alleges that this initiated a series of retaliatory events which prompted her to file a retaliation charge with the EEOC. In particular, McLintock alleged that: Lowry blamed McLintock for budget errors in the presence of other staff; Lowry cancelled several one-on-one meetings with her and began meeting with her subordinates; Lowry moved an employee from McLintock's supervision to Lowry's "command team"; Lowry failed to invite McLintock to meetings related to a project that she managed; McLintock received last-minute invitations to meetings regarding budgets that she prepared; Bowen excluded McLintock from meetings and asked others about her work. These incidents led McLintock to believe that she was being subjected to a hostile work environment as retaliation in response to her filing of a discrimination charge.

4

Beginning in Spring 2016, McLintock's team began working with the newly created Operations/Fiscal Unit. The Unit experienced significant work and organizational difficulties which created friction between members of the unit and McLintock's group. McLintock initially attributed the challenges to the Unit's lack of structure, but by August of 2017, she vocalized her belief that black staff members were at fault for racial tensions among the groups and requested gender and cultural training. McLintock stated that the unit's staff, which was "almost entirely African-American", engaged in "ganging up behaviors" and "wanted to fight about everything." Jones attributed the tensions to McLintock's lack of interpersonal skills and flexibility.

On January 29, 2020, McLintock filed a complaint alleging three causes of action: (1) discrimination and retaliation in violation of 42 U.S.C. § 1981 against Jones and the City of Philadelphia; (2) violations of Title VII and the Civil Rights Act of 1964 related to discrimination and retaliation against the City of Philadelphia; and (3) First Amendment Retaliation against both Jones and the City of Philadelphia. Jones and the City of Philadelphia filed a motion for summary judgment which the District Court granted. McLintock appealed to this Court raising four issues of District Court error. She argues that the Court: (1) improperly considered McLintock's ability to establish her *prima facie* case of discrimination *sua sponte* without providing her with notice and the opportunity to be heard on the issue; (2) wrongfully found McLintock could not establish her *prima facie* case for discrimination because she did not formally apply for the CFO position; (3) erroneously concluded that there were no sufficient material disputes of fact regarding the

5

issue of pre-text; and (4) wrongfully dismissed McLintock's retaliatory hostile work environment claims.

## II.    JURISDICTION

The District Court had jurisdiction to hear McLintock's federal claims under 28 U.S.C. § 1331. We have jurisdiction to review the District Court's determination under 28 U.S.C. § 1291.

## III.    STANDARD OF REVIEW

Our review of a grant of summary judgment is plenary. *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 246-47 (3d Cir. 2002); *Razak v. Uber Techs.*, 951 F.3d 137, 144 (3d Cir. 2019). Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "material" if it "might affect the outcome of the suit under the governing law." *Id*. When a court reviews a motion for summary judgment, it must view the evidence in the light most favorable to the non-moving party. *Razak*, 951 F.3d at 144. The court must grant the motion if, "after adequate time for discovery," the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] [would] bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV.    DISCUSSION

### a. Race Discrimination
#### i. *Prima Facie* Case

This Court must determine whether McLintock's failure to formally apply for the CFO position bars her from successfully demonstrating a *prima facie* case for racial discrimination. She contends that the District Court erred in stating that she could not establish a *prima facie* case for racial discrimination under 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Pennsylvania Human Relations Act ("PHRA")[3] and Philadelphia Fair Practices Ordinance because she did not formally apply for the CFO position or otherwise suffer an adverse employment action. In order to establish a *prima facie* case for racial discrimination under the *McDonnel Douglas* burden-shifting framework, a plaintiff must demonstrate that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). If the plaintiff meets that burden, the burden of production shifts to the defendant "to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id*. If the defendant meets that burden, the burden shifts

---

[3] Where a plaintiff brings parallel claims of employment discrimination under § 1981 and Title VII, those claims are governed by the McDonnell Douglas burden-shifting framework. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010) (noting that the substantive elements of an employment discrimination claim brought under § 1981 are "generally identical to the elements of an employment discrimination claim under Title VII.").

7

back to the plaintiff "to show that the defendant's proffered reason is merely pretext for intentional discrimination." *Id*. "To discredit the employer's proffered reason, . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken[.]" *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). "Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" that a reasonable jury could infer that the employer did not act because of the legitimate, non-discriminatory reason. *Id*.

While failure to formally apply for a job will not prohibit a plaintiff from successfully establishing a *prima facie* case for discriminatory hiring, a plaintiff must demonstrate that she made every reasonable effort to convey her interest in the job to her employer. *See EEOC. v. Metal Serv. Co.*, 892 F.2d 341, 349 (3d Cir. 1990). She must show that she was deterred from applying by the employer's discriminatory practices and would have applied for the position but for those practices, or had a genuine and real interest in the position but reasonably believed that a formal application would be futile. *Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408 (3d Cir. 1990).

Here, the District Court found that McLintock did not suffer an adverse employment action by way of not being hired as the CFO because she never applied for the position. The Court further found that she did not make any reasonable effort to convey her interest in the job to her employer. This is not an instance where the applicant had no notice of an opening. McLintock was aware of Hoefler's plan to retire for years prior to

8

his actual retirement and, upon his actual retirement, she knew that his CFO position was open. She could have applied, but she instead made no inquiries regarding the application process or any other efforts to submit an application. McLintock also did not proffer any evidence that her employer's discriminatory practices deterred her from applying or that she believed an application would be futile. Because McLintock did not allege, much less establish, that her employer interfered with her ability to apply for the CFO position, we agree with the District Court that she failed to establish a *prima facie* case for discrimination. Accordingly, we conclude that McLintock does not meet the requirements to overcome her failure to formally apply for the CFO position.

### ii. *Pretext*

Even if McLintock could meet the *prima facie* burden, she demonstrated significant interpersonal and managerial difficulties—a legitimate reason for why she would not have been hired as CFO. The record establishes that McLintock experienced significant interpersonal and managerial challenges in her role as fiscal officer. There existed, therefore, a valid basis for her application to be denied. Because McLintock provides no evidence to counter this basis, we agree with the District Court that her claim fails on these grounds as well. To survive a motion for summary judgment "when the defendant answers the plaintiff's *prima facie* case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a

9

motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

Appellees argue that McLintock was not promoted to the CFO position, in part, because of her professional challenges, which included documented difficulties managing her team and working with other teams. Following these difficulties with her co-workers and her subordinates, McLintock's superiors provided counseling on her interpersonal skills. Such difficulties were reflected in her performance evaluations. Given McLintock's troubled employment history and the absence of evidence of racial discrimination, the District Court opined that "a reasonable jury could not find that race was a motivating factor in the decision to make Lowry, and not [McLintock], CFO." The Court determined that Jones and the City of Philadelphia "present[ed] uncontradicted evidence that [McLintock's] deficiencies as a manager and co-worker were the sole and legitimate reason she was not made CFO." App. 22. We agree with the District Court that the record does not support McLintock's discrimination claims.[4]

---

[4] In her brief, McLintock states that she "is not proceeding with her retaliation claims *herein*" and that she "wishes to very succinctly focus on her claims set forth in this appeal and properly narrow the issues before this Court." Appellant Br. at 7, n3. While she does not discuss retaliation with respect to failure to promote in her brief, Appellant nonetheless proceeds to briefly address the District Court's dismissal of her retaliatory hostile work environment claim. We will therefore address this specific argument here: In addressing McLintock's claim of a retaliatory hostile work environment and finding that she had not demonstrated material adversity, the District Court opined, "Lowry's critique of Plaintiff's work and remark that she did not possess a CPA[,] . . . . [r]eceiving a late meeting invitation, being left out of a meeting concerning one's work, and not being initially invited to meetings between one's superior and subordinates" are the kind of petty slights that the *Burlington Northern* Court cautioned against. App. 26-27 (citing

**b.** *Sua Sponte* **Review**

Finally, in her brief, McLintock argues that the District Court erred when it *sua sponte* considered her ability to establish her *prima facie* case of discrimination without giving her proper notice and the opportunity to be heard on the issue.[5] Appellant Br. at 7-8. Even if the District Court did *sua sponte* rule on McLintock's ability to demonstrate a *prima facie* case for discrimination, it was well within its bounds to do so. We recognize that a court may *sua sponte* grant summary judgment without affording the plaintiff notice and an opportunity to respond where the following conditions are met: (1) the point at issue is purely legal; (2) the record was fully developed[;] and (3) the failure to give notice does not prejudice the party. *Gibson v. Mayor of Council of Wilmington*, 355 F.3d 215, 219 (3d Cir. 2004). These conditions are satisfied here.

## V.    CONCLUSION

For the foregoing reasons, we affirm the District Court's order granting of Appellee's motion for summary judgment.

---

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). None of McLintock's six allegations of retaliatory incidents over the course of six months include intimidation, offensive speech, or threats. McLintock failed to demonstrate an abusive work environment or that the actions alleged were motivated by retaliatory animus. We therefore affirm the District Court's grant of summary judgment as to McLintock's retaliatory hostile work environment claim.

[5] Neither the City of Philadelphia and Jones nor McLintock substantively addressed whether Appellant had established a *prima facie* case for racial discrimination in their respective briefs relating to Jones and the City of Philadelphia's motion for summary judgment.